**UNITED STATES of America, Appellee,**

v.

**Dennis Nelson ALLEN, Appellant.**

**No. 79–1721.**

United States Court of Appeals,
Ninth Circuit.

Argued April 10, 1980.

Submitted May 27, 1980.

Decided June 30, 1980.

As Corrected July 8, 1980.

Richard J. Troberman, Robert J. Wayne, Seattle, Wash., for appellant.

Stanley D. Tabor, Seattle, Wash., for appellee.

Before SKELTON,* Court of Claims Judge, and GOODWIN and FERGUSON, Circuit Judges.

GOODWIN, Circuit Judge.

Dennis N. Allen appeals his conviction under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) for possession of LSD with in-

tent to distribute. The only important question is whether the district court correctly denied a motion to suppress drugs found in a briefcase Allen was carrying.

On July 5, 1979, Drug Enforcement Agent Jerry Snyder, stationed in Seattle, received a telephone call from a Western Airlines salesperson who told him that a person fitting the DEA's "airport drug courier profile" had just purchased a round-trip ticket to San Francisco.[1] That person, who turned out to be Allen, conformed to the profile in several respects: (a) his destination was San Francisco, a "drug source city;" (b) he purchased his ticket in cash with bills of small denominations; (c) he appeared nervous when buying the ticket; (d) he was to have a short layover in San Francisco before returning to Seattle; and (e) he was carrying little luggage.

The DEA did not attempt to put Allen under surveillance in San Francisco. Instead, Agent Snyder decided to stop and question Allen upon his return to Seattle later the same day. When Allen deplaned, Agent Snyder and a colleague, Agent Green, approached him and asked him to identify himself. Allen produced proper identification and asked the agents to explain their actions. Agent Green told Allen that he had reason to believe that Allen was carrying drugs from San Francisco to Seattle. Allen seemed startled by this statement and immediately began to tremble and perspire. The agents then asked Allen to accompany them to the Port of Seattle police station, located on the second floor of the air terminal. Allen, who was not informed that he could refuse this request, agreed to go along.

When Allen arrived at the police station, the DEA agents asked if he would agree to

---

* The Honorable Byron G. Skelton, Senior Judge, United States Court of Claims, sitting by designation.

1. The content of drug courier profiles appears to vary in different parts of the country. The profile used by the DEA in this case was identical to that described in *United States v. Post,* 607 F.2d 847 (9th Cir. 1979). "The characteristics include a nervous manner; buying tickets

with cash, to a major drug distribution center . . . virtually immediate return flight; and no luggage." *Id.* at 850 n.3. *See United States v. Mendenhall,* 446 U.S. 544, 547 n.1, 100 S.Ct. 1870, 1873 n.1, 64 L.Ed.2d 497 (1980); *United States v. Rico,* 594 F.2d 320, 325–26 (2d Cir. 1979); *United States v. Ballard,* 573 F.2d 913, 914 (5th Cir. 1978).

a body search. Allen consented, was searched, and nothing was found. The agents next asked if they could search a leather briefcase which Allen was carrying. Allen refused, and Agent Snyder told him that he "was going to seize the attache case and . . . give him a receipt for it." Snyder then seized the case.

After the seizure, Allen stayed at the police station, talking with agents until he received a receipt for his briefcase. During this conversation, he made damaging admissions concerning the contents of the case. Agent Snyder later cited these admissions as supporting probable cause in the application for a warrant to search the briefcase. That application was granted several days after the seizure. A large quantity of LSD was found in the case.

Allen moved to suppress the LSD as the product of an illegal stop, arrest, and seizure. After the district court denied this motion, the trial on stipulated facts resulted in conviction.

In this appeal, Allen contends that the district court's refusal to suppress the LSD was improper for three reasons. First, the initial stop, based solely on Allen's conformity to the drug courier profile, was not supported by founded suspicion. Second, the agents placed Allen under arrest when they directed him to the police station for questioning, and this arrest was not based on probable cause. Finally, the agents

lacked lawful authority to seize the briefcase.

We need not address Allen's first two contentions. We do not decide whether the agents' initial contact with Allen was a reasonable "*Terry* stop" based on founded suspicion[2] or whether removal to the police station for custodial interrogation was not an arrest.[3] The seizure of the briefcase presents the critical issue.

The agent had no warrant to seize the briefcase. The district court found, however, that Agent Snyder had probable cause to seize the briefcase. We must determine whether, viewing the evidence in the light most favorable to the government, that finding was clearly erroneous. *United States v. Post*, 607 F.2d 847, 849 (9th Cir. 1979); *United States v. Cortez*, 595 F.2d 505, 507 (9th Cir. 1979).

■■■ The only information available to the DEA agents at the time they seized the briefcase was that Allen fit some of the characteristics of the drug courier profile, that he reacted nervously when told that the agents believed he was carrying drugs, and that no contraband had been discovered during the strip search.[4] These facts are not nearly so compelling as those in other decisions of this court which sustained airport stops, searches, or seizures. *See, e. g., United States v. Post, supra,* (suspect fit drug courier profile, had a record of involvement in drug smuggling, and behaved suspiciously while under surveillance during

---

**2.** The question whether a particular stop, based solely on a suspect's conformity to a drug courier profile, violates the Fourth Amendment appears to have been left unresolved by the Supreme Court's recent decision in *United States v. Mendenhall, supra,* n.1. There, two justices held that police questioning of the suspect was not a "seizure" for Fourth Amendment purposes, three justices decided that there was founded suspicion for a stop but that reliance on a drug courier profile would not necessarily establish reasonable suspicion in all cases, and the remaining members of the Court found that the stop was not supported by founded suspicion.

**3.** In *United States v. Mendenhall, supra,* n.1, the Court's majority held, on similar facts, that directing a suspect to custodial interrogation in

a less public section of the air terminal was not an arrest. *Accord, United States v. Post,* 607 F.2d 847, 850–51 (9th Cir. 1979); *United States v. Chatman,* 573 F.2d 565, 566–67 (9th Cir. 1977).

**4.** The government argues that the briefcase was seized not when Agent Snyder announced that he was going to seize it but when Allen finally left the police station without the briefcase—thus "bootstrapping" Allen's subsequent admissions to the agents an element of probable cause. We reject this characterization of the seizure. After Agent Snyder's statement, a reasonable person would not have believed that he or she was free to leave the station with the briefcase.

layover in "drug source city"); *United States v. Chatman*, 573 F.2d 565 (9th Cir. 1977) (suspect conformed to courier profile, traveled under an alias, and behaved suspiciously during layover); *United States v. Homburg*, 546 F.2d 1350 (9th Cir. 1976) (suspect attempted to conceal, and then removed, conspicuous bulge in clothing minutes after airport received a bomb threat).

Allen's conformity to some of the drug courier profile factors and his nervous behavior when stopped were insufficient to "warrant a prudent [person] in believing that petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Innocent travelers may be apprehensive when told by narcotics officers that they are suspected traffickers. Failure to uncover drugs during the strip search could just as easily support an inference that Allen was not carrying drugs as the inference that he had contraband in his briefcase.

■ The government relies now upon a warrant to open the briefcase issued after the seizure. But the seizure of the briefcase remains unjustified by any exception to the requirement of a valid warrant.[5] *Accord, United States v. Moore*, 483 F.2d 1361 (9th Cir. 1973).

Reversed.

---

5. Probable cause is determined relative to the facts known at the time of the search or seizure. *See Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Accordingly, Allen's admissions following the seizure of the briefcase cannot be used to justify the seizure.