**UNITED STATES of America,
Plaintiff and Appellee,**

v.

**Lindsay MARTELL, Defendant
and Appellant.**

**UNITED STATES of America,
Plaintiff and Appellee,**

v.

**Joseph MINNECI, Defendant
and Appellant.**

**Nos. 80–1163, 80–1154.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1980.

Decided Aug. 31, 1981.

As Amended Nov. 6, 1981.

Michael J. McCabe, Savitz & McCabe, San Diego, Cal., for defendants-appellants.

Raymond Edwards, Jr., Asst. U. S. Atty., argued, M. James Lorenz, U. S. Atty., Bruce R. Castetter, Asst. U. S. Atty., on brief, San Diego, Cal., for plaintiff-appellee.

Before FARRIS and NELSON, Circuit Judges, and CURTIS,* District Judge.

CURTIS, District Judge:

Appellants Martell and Minneci were convicted of "conspiracy to possess cocaine with intent to distribute" and "possession of cocaine with intent to distribute" in violation of Title 21 U.S.C. §§ 841(a)(1) and 846. They appeal from an order of the trial court refusing to suppress as evidence narcotics seized at the time of their arrest. Finding that the motion was properly denied, we affirm.

## I. FACTUAL BACKGROUND

On September 30, 1979, DEA agent Charles Kenerson, based in San Diego, received a telephone call from a DEA agent in Anchorage, Alaska. Kenerson understood the other agent to say that two subjects, one a known drug trafficker (Martell) who had been arrested eight months earlier with approximately a pound of cocaine and $109,000 in cash[1] had made arrangements to fly from Anchorage to San Diego. Martell was traveling under the name of A. Brewer.

Kenerson and other agents began surveillance of the San Diego airport on Septem-

---

* Honorable Jesse W. Curtis, United States District Judge, Central District of California, sitting by designation.

1. Although this information was given in good faith, it was in error in that it was not Martell but an associate of his who had been arrested.

ber 30, 1979. Minneci arrived that night carrying two suitcases. He was observed making two phone calls, and then taking a cab to the Sheraton Harbor Island Hotel. Martell arrived at 7:10 the next morning, made a phone call to the Sheraton and proceeded directly there, checking in under the name of Martell.

At about 9:45 a. m. Martell was observed leaving the hotel with an unidentified male in a white Toyota pickup truck which was then driven in a somewhat erratic manner, known to the agents as being a method of discovering and avoiding any possible surveillance. It then returned to the hotel within five minutes, whereupon Martell reentered the hotel and proceeded to the third floor. Ten minutes later Minneci was observed making telephone calls, after which he went to Martell's room on the third floor.

At 11:30 a. m. Minneci and Martell left the hotel, went back to the airport and purchased tickets under the names of Minneci and Taylor on a 12:20 p. m. Western Airlines flight to Anchorage. After purchasing their tickets they left their suitcases in the security area and went back outside the security area to have a drink. At 11:40 a. m., DEA agents sent for a narcotics detector dog. At about 12:10 p. m., Martell and Minneci were detained by DEA agents as they approached the boarding area. The agents identified themselves and stated that they were conducting a narcotics investigation. There was testimony by the agents that they had intended to detain the subjects when they approached them, and that the subjects were not free to board their flight. In Martell's case an agent testified that this was made clear to Martell by, *inter alia*, the fact that his flight left in five minutes. In Minneci's case there was testimony that his ticket was seized. The agents asked for permission to search the suitcases, which Martell and Minneci refused.

At about 12:30 (twenty minutes later) Martell, Minneci and their luggage were escorted downstairs to the Harbor Police Office (about a one-minute walk) where a narcotics detector dog (Duster) was allowed to "sniff" the luggage. In response to a question about precautions taken by the agents against escape attempts by the subjects while on the way downstairs, there was testimony that the only precaution was that the subjects were surrounded by agents. After Duster gave positive alert for narcotics in the suitcases, Martell and Minneci were transported to the Narcotics Task Force office in the east end of the airport. It was at the time of the alert that the trial court held probable cause first arose. The subjects were detained there for four hours until a search warrant was obtained, at which time the suitcases were searched and a large quantity of cocaine found, whereupon appellants were arrested.

## II. APPELLANTS' CONTENTION

Appellants argue that their twenty-minute detention by the DEA agents constituted an illegal arrest unsupported by probable cause, citing the Supreme Court's recent decision in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and that the seizure of the narcotics being the poisonous fruit of an illegal arrest cannot withstand a fourth amendment challenge. Believing, as we do, that a conceptual difference exists between the detention of the appellants on the one hand, and the detention of their suitcases on the other, we focus on what we believe to be the real issue—whether the government agents can detain the appellants' suitcases without probable cause, but upon a well founded suspicion, for twenty minutes without running afoul of the fourth amendment. We conclude that they can and that the trial court did not err in refusing to suppress such evidence.

## III. A STOP AND DETENTION OF APPELLANTS

[1] Admittedly, the agents had a well founded suspicion that the appellants were

engaged in drug trafficking, thus justifying, at least, a momentary detention of them for investigative purposes. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Based upon the same reasons, the officers likewise had a well founded suspicion that the suitcases contained the narcotics; therefore, they were justified in detaining the suitcases for further investigation. *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). Such a detention in both instances was a "seizure" to be judged by fourth amendment standards, for it was apparent from the moment the agents announced that a narcotic investigation was underway, they would not have permitted either the appellants to leave or their luggage to be removed during the brief investigation.

As the *Terry* Court points out, for fourth amendment purposes, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." 392 U.S. at 16, 88 S.Ct. at 1877. After referring to the difficulties other courts have experienced in attempting to distinguish between a stop not requiring probable cause, and an arrest which does, the Supreme Court said:

"In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness."

392 U.S. n.15 at 18, 88 S.Ct. at 1878. The Court then proceeded to balance the minimal intrusions which a momentary "stop" and "frisk" detention would cause a citizen, against the necessity of protecting the police in their law enforcement endeavors, and held that a momentary stop for the purpose of making brief inquiry and for frisking for weapons was a reasonable seizure within the fourth amendment.

Some twelve years after *Terry*, the Supreme Court decided *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), in which it recognized *Terry* as an exception to the well established prohibition of arrests without probable cause, and held that because any detention by a police officer is such "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment," the *Terry* exception must be narrowly construed allowing only momentary stops for on-the-spot questioning. In *Dunaway*, the Court specifically disapproved a detention of approximately twenty minutes, which became an in-custody interrogation.

■ In our view, however, *Terry* and *Dunaway* and their progeny relate to detention of persons and not inanimate objects. The rationale relied upon by the Court in those cases is inappropriate as applied to "things," a seizure of which constitutes a substantially less serious intrusion upon rights of the individual.[2]

## IV.  SEIZURE AND DETENTION OF LUGGAGE

We look then to the standard of reasonableness as required by the fourth amendment in the seizure and detention of inanimate objects.

In *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), the Supreme Court recognized the

---

2. The "seizure" issue in this case is distinguishable from the "search" issue in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In that case, police while executing a search warrant for a public tavern detained and searched all of the customers present. No question was raised as to the legality of the detention, but the Court held the search invalid, as the police had no basis to suspect that the customers were in any way involved in illegal activity.

In this case, we are concerned only with "detention" where the agents have a well founded suspicion that the defendants and their luggage were involved in illegal activity.

propriety of detaining inanimate objects without probable cause when "reasonable suspicion existed" that they were included in a scheme of criminal activity. In that case two twelve pound packages of coins sent by first-class mail were stopped and delayed for more than a day because government agents suspected they were part of an illegal coin importation system. Speaking for a unanimous Court, Justice Douglas acknowledged the sanctity of a citizen's fourth amendment privacy interest in sending objects through first-class mail, but added, "Yet even first-class mail is not beyond the reach of all inspection; and the sole question here is whether the conditions of its detention and inspection had been satisfied." *Id.* at 252, 90 S.Ct. at 1032. After pointing out that the officers had justifiable suspicion about these packages of coins, the Court approved their removal from the flow of the mail without a warrant while a brief investigation was being completed.

■ Although the length of time during which appellants' luggage was detained is a relevant factor when considered in the light of all the surrounding circumstances in determining whether such an intrusion is permissible under fourth amendment standards, we know of no case which has placed an outer time limit on the detention of impersonal objects such as *Dunaway* placed upon the detention of persons. As the Court said in *Van Leeuwen* :

> "Theoretically—and it is theory only that respondent has on his side—detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment. Detention for 1½ hours—from 1:30 to 3 p. m.—for an investigation certainly was not excessive; . . ." *Id.*

■ In any event, in the case before us, the suitcases were detained for only twenty minutes awaiting the arrival of a police dog, a period of time well within that allowed in *Van Leeuwen*. It was the dog's signal that the luggage contained narcotics which provided probable cause upon which a warrant was then issued pursuant to which the suitcases were searched and the appellants arrested. In our view such a detention under these facts does not offend constitutional standards.

The dissent finds this holding a startling departure from the fourth amendment's prohibition against warrantless seizures without probable cause, a precept which the dissent apparently considers inviolate and inflexible. However, the fourth amendment addresses itself only to "unreasonable searches and seizures" and the books are replete with cases wherein, for a variety of reasons, warrantless searches without probable cause have been held not unreasonable.

For example, border searches have generally been recognized as permissible even though without warrant or probable cause, and even where there has been no justifiable suspicion of illegality. Although specifically allowed by statute, such searches must still pass constitutional muster. Such searches have been upheld not as "exceptions to the rule," but as being *reasonable* in the light of the government's sovereign right to protect its borders. *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).

Furthermore, administrative searches have been upheld without warrant, without probable cause, and without a reasonable suspicion of the illegality where they serve as a part of some governmental regulatory scheme. *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (upheld a search of a licensed firearm dealer's storeroom as part of inspection procedures authorized by the Gun Control Act of 1968); *Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (upheld entry into leased premises as part of a routine annual inspection by city housing inspectors to determine compliance with city codes); *United States v. Schafer*, 461 F.2d 856 (9th Cir. 1972) (upheld the search of an air traveler's luggage as part of a

screening inspection of all luggage and personal effects of aircraft passengers leaving Hawaii to prevent exportation of plants, pests and diseases).

Warrantless searches without probable cause have been upheld when required as a condition for entering aircraft or public buildings as a part of a regulatory scheme to assure public safety. *Downing v. Kunzig*, 454 F.2d 1230 (6th Cir. 1972) (upheld the search of a briefcase for weapons and explosives pursuant to a rule conditioning entry into a federal building upon submission to such a search).

In considering these decisions, we recognize that the Fourth Amendment itself defines the standard for searches and seizures. We do not retreat from the requirement of a warrant or probable cause except in exceptional circumstances. The basic test of reasonableness under the Fourth Amendment is the warrant requirement. The decisions upon which we rely are bottomed upon the concept that in the light of all the circumstances the searches are not unreasonable by constitutional standards.[3]

In *Van Leeuwen*, which the dissent brushes aside as having no application outside the mail context, the Court made no pretense of carving out a brand new exception to the fourth amendment. Instead it merely held that under those suspicious circumstances a warrantless seizure without probable cause was not unreasonable.

Furthermore, the dissent calls our attention to *United States v. Allen*, 644 F.2d 749 (9th Cir. 1980), a case recently decided by this court, holding that the warrantless seizure of a briefcase without probable cause violated the fourth amendment. However, that case is clearly distinguishable from the one at bar. The sole issue there was whether the district court's finding of probable cause was supported by the evidence. We held that the evidence there was insufficient to uphold such a finding. In that case, we specifically refused to address the question of whether or not the agent had a "founded suspicion." In the case before us, however, the district court found that the agent had such "founded suspicion" when defendants were stopped and, consequently, at the time the bags were seized, and the facts before us are more than sufficient to support such a finding.

## V. EFFECT OF UNLAWFUL ARREST

█ If the detention of the appellants became an unlawful arrest by reason of the length of time they were detained,[4] it has importance in this case only if the detention during the unlawful period contributed in some fashion to the search and seizure of the narcotics. Since the agents conducted no interrogation of the appellants during the unlawful portion of their detention, the agents gained nothing that they had not already learned during the permissible portion of their detention. Consequently, even assuming the arrest to be unlawful by reason of the detention of the appellants for an excessive period of time, it would not taint the search and seizure of the suitcases.

3. In *Michigan v. Summers*, —— U.S. ——, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), after citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Brigoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the Court commented:

> These cases recognize that some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity. In these cases, as in *Dunaway*, the

> Court was applying the ultimate standard of reasonableness embodied in the Fourth Amendment. (Footnote omitted.) They are consistent with the general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause. But they demonstrate that the exception for limited intrusions that may be justified by special law enforcement interests is not confined to the momentary, on-the-street detention accompanied by a frisk for weapons involved in *Terry* and *Adams*. (Footnote omitted). —— U.S. at ——, 101 S.Ct. at 2592.

4. We specifically refrain from deciding whether the detention of the defendants personally exceeded the limits established by *Terry* and *Dunaway*.

The concept of evaluating evidence in detention cases, depending upon whether evidence was obtained before or after the detention became unlawful, has been clearly recognized in this and other circuits. In *United States v. Chamberlin*, 644 F.2d 1262 (9th Cir. 1979), the officers made an investigatory stop and asked the suspect several questions. The detention ultimately became an unlawful arrest. Upon motion the court, while excluding the statements made by the defendant after the arrest became unlawful, admitted statements made by the defendant in the early stages of the arrest when its illegality could not be questioned.

In *United States v. Mayes*, 524 F.2d 803 (9th Cir. 1975), the court was considering a border search which was legal in its inception, but which later became an unlawful detention. Acting upon information which they obtained from the suspect when first interrogated, the agents detained the suspect while the original information was being verified. As a result, the agents obtained evidence sufficient to justify the issuance of the search warrant. The court held that even though the lengthy detention of the suspect was illegal, such detention did not taint the seizure of the contraband found as a result of following the lead given by the suspect during the first part of the confrontation when his detention was lawful. In denying the motion to suppress, the court said:

"... [E]ven if the detention was unconstitutional, it was unrelated to the discovery of the cache. No evidence gained during Mayes' detention led to the cache of marijuana. The only evidence from Mayes that they relied upon was the shape of his boot print and his improbable story that he was robbed in Tijuana. Both were obtained during the short time—approximately five minutes—that he was questioned at Jewel Valley Road. Detention for this brief time undoubtedly was justified by Mayes' improbable account of being robbed in Tijuana, *Terry v. Ohio*, 392 U.S. 1, 20–23 [88 S.Ct. 1868,

1879–1881, 20 L.Ed.2d 889] (1968) [other cites omitted]. We conclude that the cache of marijuana was discovered without reliance upon any allegedly illegal police conduct. This discovery produced probable cause for an arrest of Mayes." 524 F.2d at 806.

In *United States v. Klein*, 626 F.2d 22 (7th Cir. 1980), the court confronted a factual situation almost identical with the facts before us. Officers having a well founded suspicion detained defendants at an airport and seized their bags. Although the suspects were told they were free to go, subsequent police conduct resulted in what all parties agreed was an unlawful arrest. The bags were detained until a canine narcotic detector was obtained which furnished the basis for a search warrant. The court, in reliance upon *Van Leeuwen*, held "that at the time they decided to detain the bags while waiting for a canine trained in drug detection, the DEA agents had reasonable suspicion to believe that the bags contained contraband; they would have been remiss in not detaining the bags for further investigation.... [T]hey did not search the defendants' luggage until after probable cause had been established and after they had obtained a search warrant, ..." 626 F.2d at 26.

More recently, the first circuit reached a similar conclusion in *United States v. Viegas*, 639 F.2d 42 (1st Cir. 1981). The facts in this case are strikingly similar to those in the case before us. In both cases reasonable suspicion existed at the outset, both as to the suspects and their suitcases. In both cases the suspects were not interrogated during the detention of their bags, and in both cases the bags were not opened until a search warrant was obtained after the dog gave positive alert signs indicating the presence of drugs in the bags. Under these facts, the court affirmed the lower court's denial of a motion to suppress.

Our ruling here does not erode appellants' right to privacy as protected by the fourth amendment. As the Court pointed out in *Van Leeuwen*:

"The only thing done here on the basis of suspicion was detention of the packages. There was at that point no possible invasion of the right 'to be secure' in the 'persons, houses, papers, and effects' protected by the Fourth Amendment against 'unreasonable searches and seizures....'

No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained."

397 U.S. at 252–53, 90 S.Ct. at 1032.

Therefore, we hold no fourth amendment right was invaded here for the suitcases were detained upon a well founded suspicion that they contained narcotics, and their detention for approximately twenty minutes awaiting the police dog was not unreasonable. The actual search of the contents of the bags did not occur until after a valid search warrant had been obtained.

Accordingly, we affirm.

NELSON, Circuit Judge, dissenting:

Today this Circuit breaks new constitutional ground in a troublesome interpretation of fourth amendment law. Going beyond even the First Circuit in *United States v. Viegas* and the Seventh Circuit in *United States v. Klein*, the majority finds in a Supreme Court case concerned with the *delay* of mail the authority to justify *seizure* of a suitcase—seizure not only without a warrant but without even probable cause. Furthermore, in order to apply this new doctrine, the majority must disregard the simultaneous unlawful arrest of the defendants. In examining the seizure of the suitcases as a separable, independent action, the majority seeks to legitimize part of what was clearly a single, integrated instance of unconstitutional police conduct. I must respectfully dissent. While I can understand, and indeed share, the reluctance of the majority to release these defendants when the police conduct involved seems so "reasonable," we cannot ignore the doctrinal framework of decided fourth amendment law in search of a particular result.

### I. Seizure of the Suitcases

The majority's analysis begins by indicating that the "real issue" here is whether government agents could "detain" the suitcases without probable cause for twenty minutes. In Section III, the majority tells us that a stop and detention of the appellants was justified by *Terry*. The "detention" of the suitcases, which the majority acknowledges to be a fourth amendment seizure, is supposedly justified independently under *Van Leeuwen*. While the Supreme Court in *Dunaway* made it clear that the *Terry* exception was a narrow one, the majority avoids the force of this stricture by stating that "*Terry* and *Dunaway* and their progeny relate to detention of persons and not inanimate objects." The seizure and detention of the suitcases is not subject to the same restrictions, we are told, and is therefore to be analyzed under a general standard of reasonableness under *Van Leeuwen*. To understand why such an approach is a profound departure from both Supreme Court and Ninth Circuit precedent, we must first look to some basic fourth amendment principles.

### a. Fourth Amendment Principles

We start with the proposition that the Fourth Amendment applies equally to searches and to seizures. It provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized....

A search and seizure question therefore begins with the proposition that "the

most basic constitutional rule in this area is that 'searches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject to a few specifically established and well delineated exceptions.' " *Coolidge v. New Hampshire,* ... 403 U.S. [443] at 454–55, [91 S.Ct. 2022, at 2031–2032, 29 L.Ed.2d 564], *quoting Katz v. United States,* 1967, 389 U.S. 347, 357 [, 88 S.Ct. 507, 514, 19 L.Ed.2d 576] . . . .

*United States v. McCormick,* 502 F.2d 281, 285 (9th Cir. 1974) (bracketed language in *McCormick*).[1] "Unless a warrantless search or seizure meets one of these exceptions, the evidence thereby obtained is inadmissible at trial." *United States v. Jamerson,* 549 F.2d 1263, 1270 (9th Cir. 1977). See *United States v. Allard,* 634 F.2d 1182, at 1184–1187 (9th Cir. 1980).

The majority takes a different approach, concluding that the prohibition against warrantless searches and seizures is not a *per se* rule subject to only limited exceptions. It states that "the books are replete with cases wherein, for a variety of reasons, warrantless searches without probable cause have been held not unreasonable," and offers as examples a number of recent decisions. The searches in these cases were not justified, according to the majority, "as exceptions to the general constitutional prohibition against warrantless searches without probable cause. These decisions are bottomed upon the concept that in the light of all the circumstances the searches were not unreasonable by constitutional standards."

This notion goes to the heart of my disagreement with the majority. Two considerations persuade me that it does not correctly state fourth amendment law. First, it is impossible to square with the repeated statements by the Supreme Court on the subject of the warrant requirement. *See, e. g., Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *United States v. McCormick,* 502 F.2d 281, 285 (9th Cir. 1974). Second, and perhaps more significantly, the very cases cited by the majority did not actually turn on, nor do they support, any such "reasonabless in light of all the circumstances" rationale. *See United States v. Ramsey,* 431 U.S. 606, 621, 97 S.Ct. 1972, 1981, 52 L.Ed.2d 617 (1977) (Rehnquist, J.) ("[T]he 'border search' exception ... is a longstanding, historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained, and in this respect is like the similar 'search incident to lawful arrest' exception treated in *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973)."); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 313, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978) ("The Secretary urges that an exception from the search warrant requirement has been recognized for 'pervasively regulated business[es],' *United States v. Biswell,* 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972), and for 'closely regulated' industries 'long subject to close

---

1. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), made it clear that the long standing *Katz per se* rule applied to seizures as well as searches. In part II C of that opinion, the Court discussed the state's argument that a seizure and subsequent search of an automobile *with probable cause* but without a warrant was still justified under the "plain view" exception to the warrant requirement. The Court concluded that the seizure did not fit the exception, and noted that consideration of the legality of the subsequent search was thus unnecessary. 403 U.S. at 464–65, 91

S.Ct. at 2037. Thus there can be no doubt that it was the failure to find an exception to justify the warrantless *seizure* that gave rise to a fourth amendment violation at that point, without regard to the subsequent search. *See United States v. Edwards,* 415 U.S. 800, 802, 94 S.Ct. 1234, 1236, 39 L.Ed.2d 771 (1974) ("The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions." Here a warrantless seizure of clothing was upheld as pursuant to a lawful arrest.)

supervision and inspection.' *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 74, 77, 90 S.Ct. 774, 775, 777, 25 L.Ed.2d 60 (1970). These cases are indeed exceptions, but they represent responses to relatively unique circumstances."); *Wyman v. James*, 400 U.S. 309, 317, 91 S.Ct. 381, 385, 27 L.Ed.2d 408 (home visit required for AFDC eligibility not a search); *United States v. Schafer*, 461 F.2d 856, 858 (9th Cir.), *cert. denied*, 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136 (1972) (even in administrative search context, "[t]he proposition is firmly established that 'except in certain carefully defined classes of cases, a search of private property is "unreasonable" unless it has been authorized by a valid search warrant.'" *quoting Camara v. Municipal Court*, 387 U.S. 523, 529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967)); *McMorris v. Alioto*, 567 F.2d 897, 899 (9th Cir. 1978) ("Those cases that sustained limited searches of persons seeking to enter sensitive facilities recognize an exception to the general requirement that searches are proper only if conducted pursuant to a lawful warrant. *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973); *Downing v. Kunzig*, 454 F.2d 1230 (6th Cir. 1972).")[2] Fourth amendment questions continue to be analyzed according to the principles set forth in such cases as *Coolidge* and *Katz.*

There is no question that, although the majority often chooses to use the word "detention," there was a seizure of the suitcases here. Because there was no warrant, the majority must point to an exception to the warrant requirement that would justify a seizure under circumstances where, as here, the police not only lack the judicial determination of probable cause that is the necessary prerequisite to the issuance of a warrant, but the underlying probable cause itself. *See United States v. Allen*, 644 F.2d 749 (9th Cir. 1980) (finding unlawful warrantless seizure of briefcase in absence of probable cause).[3] The majority points to no such exception, and I am unable to find one.

**2.** The majority also looks for support to *Michigan v. Summers*, —— U.S. ——, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). *Summers*, like *Terry* and *Dunaway*, is a case dealing with the detention of people, and thus provides no further support for the majority's object seizure doctrine.

**3.** The absence of probable cause at the time the DEA agents seized the suitcases marks a crucial distinction between the instant case and, *e. g., Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The latter cases involved seizures followed by searches of, respectively, a suitcase and a footlocker, in the absence of a warrant. In both cases, probable cause was found to exist; the crucial inquiry was whether an exception to the warrant requirement applied to relieve the police of their obligation to obtain a warrant before searching the contents of the seized items.

While the Court did not need to address the propriety of the seizures in either case, the seizure in *Sanders* could presumably have been justified by the presence of probable cause plus exigent circumstances, *see* 442 U.S. at 761, 99 S.Ct. at 2591 ("Having probable cause to believe that contraband was being driven away in the taxi, the police were justified in stopping the vehicle, searching it on the spot, and seizing the suitcase."), and the seizure in *Chadwick* was incident to a lawful arrest after a narcotics dog indicated the presence of contraband in the trunk of the defendants' car, *see* 433 U.S. at 3, 97 S.Ct. at 2479. In both cases, however, any exigency ended once the police had seized the objects to be searched and had them securely within their control. *See* 442 U.S. at 763, 99 S.Ct. at 2593; 433 U.S. at 13, 97 S.Ct. at 2484. Thus warrantless searches of the seized objects, even with probable cause, were impermissible.

Here, by contrast, the seizures could not be justified on a similar basis due to the lack of probable cause (or a lawful arrest). Furthermore, it is interesting to consider whether one could even argue the existence of exigent circumstances. Due to the unlawful arrest, the defendants were immobilized across the room from their suitcases. It is difficult to see what exigency remained after that time. *See* 442 U.S. at 763, 99 S.Ct. at 2593; 433 U.S. at 13, 97 S.Ct. at 2484. Indeed, I would challenge the use of an exigent circumstances analysis when the exigency has been removed by unlawful police action. This point helps to illustrate the difficulties inherent in the majority's analytical approach that attempts to consider the seizure of the suitcases as independent of the unlawful arrest. *See* Part II, *infra*.

Notably, the Court in both *Sanders* and *Chadwick* rejected prosecution arguments that the exigent circumstances exception associated with automobiles under *Carroll* should be ex-

Its analysis thus seems to dispense with the Supreme Court's carefully guarded doctrinal framework in reaching this newly-announced general standard of "reasonableness as required by the Fourth Amendment in the seizure and detention of inanimate objects."

### b. Van Leeuwen and Terry

For both its approach and conclusion, the majority, like the *Klein* and *Viegas* courts, relies heavily on principles it perceives in *United States v. Van Leeuwen*. *Van Leeuwen* was a case involving the detention of first class mail.[4] The opinion certainly gives no indication that it is creating a whole new branch of fourth amendment doctrine; indeed, nowhere in the opinion does the Court give any indication that the case is designed to have any application outside the mail context.[5] Given the doctrinal background for the Court's decision, including the long acceptance of the "familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances,' " *Coolidge*, 403 U.S. at 468, 91 S.Ct. at 2039, it is unlikely that the *Van Leeuwen* Court would think to dispense with both the probable cause and warrant requirements in a broad range of cases without an extended discussion of the careful balancing of inter-

tended to validate the searches there at issue. As the *Sanders* Court stated:

[B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and the "burden is on those seeking the exception to show the need for it." . . . Moreover, we have limited the reach of each exception to that which is necessary to accommodate the identified needs of society.

442 U.S. at 760, 99 S.Ct. at 2591 (citations omitted).

4. The facts in *Van Leeuwen* were described by the Court in the following manner:

Respondent, at about 1:30 p. m. on Thursday, March 28, 1968, mailed two 12-pound packages at the post office in Mt. Vernon, Washington, a town some 60 miles from the Canadian border. One package was addressed to a post office box in Van Nuys, California, and the other to a post office box in Nashville, Tennessee. Respondent declared they contained coins. Each package was to be sent airmail registered and each was insured for $10,000, a type of mailing that the parties agree was first class, making them not subject to discretionary inspection.

When the postal clerk told a policeman who happened to be present that he was suspicious of the packages, the policeman at once noticed that the return address on the packages was a vacant housing area of a nearby junior college, and that the license plates of respondent's car were British Co-· lumbia. The policeman called the Canadian police, who called customs in Seattle. At 3 o'clock that afternoon customs called Van Nuys and learned that the addressee of one package was under investigation in Van Nuys for trafficking in illegal coins. Due to the time differential, Seattle customs was unable to reach Nashville until the following morning, March 29, when Seattle was advised that the second addressee was also being investigated for the same crime. A customs official in Seattle thereupon filed an affidavit for a search warrant for both packages with a United States commissioner, who issued the search warrant in Mt. Vernon at 6:30 p. m., 2½ hours later. Thereupon the packages were opened, inspected, resealed, and promptly sent on their way.

397 U.S. at 249–50, 90 S.Ct. at 1029–1030.

5. Indeed, in the eleven years since *Van Leeuwen* was decided, the Supreme Court has cited it only twice and this court has cited it only three times, one of which was the remand of *Van Leeuwen* itself. In none of these cases is there any suggestion that the principle enunciated in *Van Leeuwen* applies to anything other than mail. *See United States v. Chadwick*, 433 U.S. 1, 10, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (citing *Van Leeuwen* as holding that a search warrant was necessary to open two packages); *Doe v. Bolton*, 410 U.S. 179, 211, 93 S.Ct. 739, 757, 35 L.Ed.2d 201 (1973) (Douglas, J. concurring) (citing his *Van Leeuwen* opinion for the proposition that the first amendment protects the privacy of first class mail); *United States v. Choate*, 576 F.2d 165, 176 (9th Cir. 1978) (citing *Van Leeuwen* as support for holding that use of a mail cover, in which information on the outside of an envelope is used, was not an intrusion of a person's reasonable expectation of privacy); *United States v. Sadrzadeh*, 440 F.2d 389, 390 (9th Cir. 1971) (cryptic citation to *Van Leeuwen* as providing no aid to Sadrzadeh. "Where customs is involved there must of necessity be more delay than in the ordinary transmission of the mails.").

ests that would lead to such a result. Even when the Court has taken the less significant step of setting out an exception to the warrant requirement alone, such a discussion is virtually inevitable. *See, e. g., United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (scope of search incident to lawful arrest); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ("automobile" exception). Similarly, when the Court announced its landmark decision in *Terry*, and "for the first time recognized an exception to the requirement that Fourth Amendment seizures of persons be based on probable cause," *Dunaway*, 442 U.S. at 208, 99 S.Ct. at 2254, the Court was careful to explain why this specially limited intrusion was not subject to the standard requirement of probable cause. *See* 392 U.S. at 20–27, 88 S.Ct. at 1879–1883; *Dunaway*, 442 U.S. at 208–210, 99 S.Ct. at 2254–2255 (discussion of *Terry*).

A more likely reading of *Van Leeuwen* would treat it not as a case creating a new type of constitutionally permissible seizures of objects, but as a case defining the level of expectation of privacy in mail which determines the extent of applicability of the fourth amendment itself. *See Rakas v. Illinois*, 439 U.S. 128, 140–43, 99 S.Ct. 421, 428–430, 58 L.Ed.2d 387 (1978) (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), for the proposition that capacity to claim the protection of the fourth amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place). When one closely analyzes the Court's reasoning in *Van Leeuwen*, the correctness of this view becomes clear.

Justice Douglas' discussion in *Van Leeuwen* begins by focusing on the constitutional protections historically applicable to mail, a discussion which emphasizes security from government intrusion of the interior contents of letters and packages as a fourth amendment value and notes the important freedom of expression interests in those contents under the first amendment. 397 U.S. at 251–52, 90 S.Ct. at 1031–1032. It is from this perspective, one that views interference with the mail as interference with communication, that the Court turns to the "sole question" of whether the conditions for the detention and outward inspection of the packages had been satisfied. *Id.* at 252, 90 S.Ct. at 1032.

The Court next notes that the suspicious nature of the packages "certainly justified detention, without a warrant, while an investigation was made." *Id.*

> The only thing done here was detention of the packages. There was at that point *no possible invasion* of the right "to be secure" in the "persons, houses, papers, and effects" protected by the Fourth Amendment against "unreasonable searches and seizures." *Theoretically— and it is theory only* that respondent has on his side—detention of mail could at some point become an unreasonable seizure of "papers" or "effects" within the meaning of the Fourth Amendment.

*Id.* (emphasis added).

This passage appears only to establish fourth amendment parameters for the *sui generis* category of mail. Surely it does not contain the sweeping proposition that any time the police seize and detain any object there is "no possible invasion" of fourth amendment rights. Rather, it is clear that the Court is saying only that the mere detention of mail, the immediate possession of which has already been voluntarily surrendered to government officials, does not necessarily constitute a fourth amendment seizure—although in "theory only," such a detention could at some point become an unreasonable seizure.

*Van Leeuwen* thus stands in sharp contrast to *Terry*, where the Court acknowledged that the defendant's fourth amendment interests had been intruded upon when he was seized and searched, 392 U.S. at 16–20, 88 S.Ct. at 1877–1879, but concluded that this specially limited type of

intrusion was justified. In *Van Leeuwen*, on the other hand, the Court stated:

> *No interest protected by the Fourth Amendment* was invaded by forwarding the packages the following day rather than the day they were deposited. The significant Fourth Amendment interest was in the privacy of this first class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained.

397 U.S. at 253, 90 S.Ct. at 1032 (emphasis added). *Van Leeuwen* therefore can only be understood, both from its heavy emphasis on the interests in and characteristics of mail and its cursory examination of broader fourth amendment principles, as a case concerned with the nature and extent of fourth amendment rights *in mail*.

Two other points buttress this conclusion. First, as mentioned above, mail is necessarily voluntarily placed in the possession of the government. The detention involved there is a significantly different type of intrusion from the type of seizure involved in the instant case, and is not surprisingly subject to a different type of analysis. The Court in *Van Leeuwen* was thus very careful not to use the word "seizure" in describing the treatment of the mail. Rather than a removal from the possession of an individual, this was merely an increase in the amount of time a package already in government hands remained in government hands. Second, the significant amount of detention time involved in *Van Leeuwen* makes broader applicability unlikely. If, as the majority holds today, *Van Leeuwen* constitutes authority for a broad range of object seizures, then it would follow that in at least some circumstances, such an object could be held not merely for the twenty

minutes involved in the instant case, but for at least the time permitted in *Van Leeuwen* —in the area of nineteen hours from the detention to the time probable cause arose in the case of the second package—without having invaded *any* interest protected by the fourth amendment.[6] Such a result cannot seriously be argued, which only illustrates how limited the applicability of *Van Leeuwen* must truly be.

In short, I find very little support for the majority holding. In contrast with *Van Leeuwen*, where "[n]o interest protected by the Fourth Amendment" was infringed, it is undeniable that fourth amendment interests *are* intruded upon when the police remove a suitcase from an individual's possession. The fundamental character of such an action cannot be altered by labeling it a detention—it is unquestionably a fourth amendment seizure. While the logic of the majority opinion makes sense on the surface, the Supreme Court has repeatedly and emphatically rejected the balancing-type "reasonableness" inquiry the majority chooses here, except for rare instances involving extremely limited intrusions. As the Court noted recently in the arrest context:

> [T]he protections intended by the Framers could all to easily disappear in the consideration and balancing of the multifarious circumstances presented by the different cases, especially when that balancing may be done in the first instance by police officers engaged in the "often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 [68 S.Ct. 367, 369, 92 L.Ed. 436] (1948). A single, familiar standard is essential to guide police officers who have only limited time and expertise to reflect on and balance the social and indi-

---

**6.** At the very least, *Van Leeuwen* would permit such lengthy detentions where, because of administrative problems, such delay was not "unreasonable." In *Van Leeuwen*, for example, one package was detained in Washington state overnight because, due to the time difference, it had been received too late in the day to contact federal officials in Tennessee. The Court

termed this delay "unavoidable." *See* 397 U.S. at 253, 90 S.Ct. at 1032. A comparable argument could be made in the instant case, presumably, if the kennel housing the narcotics dog had been closed for the night, so that the dog would not be available until the following day.

vidual interests involved in the specific circumstances they confront. Indeed, our recognition of these dangers and our consequent reluctance to depart from the proved protections afforded by the general rule, are reflected in the narrow limitations emphasized in the cases employing the balancing test. For all but these narrowly defined intrusions, the requisite "balancing" has been performed in centuries of precedent and is embodied in the principle that seizures are "reasonable" only if supported by probable cause.

*Dunaway*, 442 U.S. at 213–14, 99 S.Ct. at 2256–2257. I find no support for the majority's assertion that the police can seize a suitcase from an individual on mere reasonable suspicion.[7] Indeed, I find the majority's statement that "no fourth amendment right was invaded" by such an action to be unwarranted.

The majority's departure from established fourth amendment principles may seem eminently reasonable and quite justified by pragmatic considerations of law enforcement. Yet, as Justice Bradley sagely observed in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), it is just that sort of temptation that courts must carefully resist. "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." *Id.* at 635, 6 S.Ct. at 534.

## II. Relationship of the Unlawful Arrest

I also question the majority's analytical approach in evaluating the seizure of the suitcases as separable from the unlawful arrest. The majority looks to *United States v. Chamberlin*, 644 F.2d 1262 (9th Cir. 1980) and *United States v. Mayes*, 524 F.2d 803 (9th Cir. 1975) for support of its argument that the unlawful arrest did not "taint" the seizure and search of the suitcase. These cases do not, however, support this approach.

In *Mayes*, statements made by a defendant when initially detained led the police to follow his footprints backward, thereby discovering the marijuana cache that supplied the probable cause for Mayes' arrest. In *Chamberlin*, statements made during a *Terry* stop did not need to be suppressed when that stop later became an unlawful arrest.

---

**7.** I also note that neither the *Klein* nor *Viegas* courts cite to any Supreme Court authority other than *Van Leeuwen* for their assertion that a suitcase can be detained on reasonable suspicion. *See Viegas*, 639 F.2d at 45; *Klein*, 626 F.2d at 25–26.

This court's recent decision in *United States v. Allen*, 644 F.2d 749 (9th Cir. 1980), also suggests that such an approach is incorrect. In *Allen*, the defendant was approached by DEA agents in an airport because he allegedly fit the DEA's "airport drug courier profile." They asked him for identification, and then requested that he accompany them to the airport police station. Upon arrival, they asked if they could search him and he consented. Nothing was found. The agents then asked if they could search Allen's briefcase. When he refused, the officers seized the briefcase. While they were writing a receipt for the case, Allen remained at the police station talking with the officers. "During this conversation, he made damaging admissions concerning the contents of the case." *Id.* at 751. These admissions were used by Agent Snyder to help support probable cause in his application for a warrant. A search of the briefcase conducted pursuant to that warrant revealed a large quantity of LSD.

We held in that case that the fruits of the search had to be suppressed because "the seizure of the briefcase remain[ed] unjustified by any exception to the requirement of a valid warrant." *Id.* at 752. As in the present case, the lack of probable cause prevented the use of a "probable cause plus exigent circumstances" type formulation.

Of particular interest was our statement that, because probable cause must be determined at the time of seizure, "Allen's admissions following the seizure of the briefcase cannot be used to justify the seizure." *Id.* at 752 n.5. Were a brief detention of the briefcase a legitimate act, as the majority holds today, statements made by the defendant during that apparently brief detention would clearly seem to be admissible to establish probable cause. *See, e. g., Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (revolver found on defendant's person pursuant to a *Terry*-stop gave rise to probable cause to arrest defendant for unlawful possession of a weapon). The majority's holding today thus also appears to be inconsistent with *Allen*.

There is a fundamental difference between those cases and the one at bar. Here, the seizures of the individuals and suitcases were part of a single, unified police action. The majority chooses to slice a lesser included intrusion (seizure of the suitcases) from the simultaneous greater intrusion (unlawful arrest) that began at the inception of contact with the defendants. This is a unique approach to fourth amendment adjudication. The issue here is the *scope* of the fourth amendment violation itself, not whether the evidence involved was fruit in the sense that it was discovered pursuant to a violation. The question is thus not, as in *Chamberlin*, whether evidence obtained in the early, legitimate stages of what became an unlawful arrest is admissible, but whether a seizure of luggage that is clearly ancillary to an unlawful arrest should be subject to a separate analysis.[8] The majority cites no precedent for fragmenting a unified, simultaneous action into isolated parts for analysis. Such an approach would seem to be contrary to the deterrent policy behind the exclusionary rule. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In light of that policy, I cannot approve the judicial technique of winnowing a fortuitous "lawful" facet out of an otherwise unlawful incident. I see no reason for courts artificially to bifurcate police actions on a *post hoc* basis in an attempt to evade the exclusionary rule.

What happened here was a seizure of people and suitcases. I would analyze this integrated action as a single, unlawful seizure and thus would never have reached the *Van Leeuwen* issue.

I would reverse the district court.

---

8. By employing such an analysis, this court is going beyond both *Klein* and *Viegas*. In *Klein*, the defendants were initially told they were free to go while their suitcases were being detained. *See* 626 F.2d at 25. In *Viegas*, after a brief *Terry* stop, the defendant consented to a dog sniff, and agreed to accompany a DEA agent to his office. When a dog was not available, the defendant was allowed to leave although his bag was retained. *See* 639 F.2d at 44. Thus neither court was faced with the type of unified action we have here.