**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jackson Earl BELCHER,
Defendant-Appellee.**

No. 81–1482.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1982.

Decided Aug. 24, 1982.

Francis J. Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellant.

Robert J. Wayne, Richard J. Troberman, Seattle, Wash., for defendant-appellee.

Before KENNEDY, FARRIS and NORRIS, Circuit Judges.

FARRIS, Circuit Judge:

Jackson Earl Belcher was carrying cocaine in his shoulder bag upon his arrival at Seattle-Tacoma International Airport. The district court found that the drug enforcement agents did not have probable cause to seize Belcher's shoulder bag. Therefore the district court granted Belcher's motion to suppress the cocaine found in the subsequent search of the shoulder bag. The government appeals the district court's decision.

On May 21, 1981, two Florida based Drug Enforcement Administration Task Force officers called a DEA agent at Seattle-Tacoma International Airport. They advised the Seattle agent that they had just observed a suspicious individual board a flight to Atlanta with a connecting flight to Seattle. Their attention had been drawn to this individual because he had been weaving, and in general, acting nervously. The agents stated that as the individual approached the magnetometer, he hesitated and watched as others passed before he proceeded through. He then went to a men's room where he entered one of the toilet stalls and appeared to place something into his hand-carried luggage. Approximately five minutes later, the suspect exited the men's room and boarded his flight. The agents also overheard him tell a ticket agent that he had no luggage to check.

At approximately 2:25 a.m. on May 22, 1981, the suspect's flight arrived in Seattle. The Seattle officer watched the suspect described by the Florida agents exit the aircraft, but not proceed directly to the main terminal. When the suspect finally moved toward the main terminal, the Seattle DEA agent approached him, identified himself as a law enforcement officer, and asked to speak with him.

During the investigatory stop the officer learned that the suspect's name was Jackson Earl Belcher, but that he was traveling on a ticket issued to a J. Bryan. Belcher explained that his travel agent had misunderstood him when the ticket was issued. However, Belcher gave somewhat evasive answers when questioned about the purpose of his trip. During the questioning the DEA agent learned that a records check showed no outstanding warrants on Belcher. After some additional questioning, the Seattle officer requested Belcher to consent to a search of his hand-carried luggage. When Belcher refused, the Seattle officer told Belcher that his shoulder bag would be detained until a search warrant could be obtained.

■ The government contends that the district court erred in deciding that Belcher's shoulder bag should not have been detained by the DEA agent because probable cause did not exist to justify the seizure of the bag. The government, citing *United States v. Martell*, 654 F.2d 1356, 1359–61 (9th Cir. 1981), argues that only reasonable suspicion was required to detain the shoulder bag. The district court correctly applied the probable cause standard, as *Martell* is not controlling. In *Martell* we held that only reasonable suspicion was required where agents temporarily detained for investigative purposes the luggage of suspected drug traffickers. Because the luggage had been left unattended in the security area, the luggage was not in the possession of the owner. In this case, however, the bag was in Belcher's physical possession. *See United States v. O'Connor*, 658 F.2d 688, 692 n.6 (9th Cir. 1981); *United States v. Hunt*, 496 F.2d 888, 893 (5th Cir. 1974).

■ The agent lacked probable cause at the time he seized Belcher's shoulder bag. The articulable facts which the police possessed at the time of the seizure were that Belcher walked in a weaving or wobbling manner, appeared nervous and was shabbily dressed, purchased his ticket four hours

before the flight with cash, had no luggage other than a shoulder bag, appeared to hesitate before passing through a magnetometer, entered a toilet stall and appeared to place some object into his shoulder bag, was travelling from a drug source city, and did not proceed directly to the main terminal building when he arrived in Seattle. Furthermore, the agents knew that he was not travelling under his legal name and that he gave evasive answers to questions about the purpose of his trip. The district court was not clearly erroneous in deciding that these facts alone did not give the police probable cause to seize the bag. *See United States v. O'Connor*, 658 F.2d at 690–91 & n.5 (9th Cir. 1981). The district court properly suppressed the evidence which was gained through the illegal seizure. Because we agree with the district court's finding that the seizure of Belcher's shoulder bag was impermissible, we need not address the other issues raised on appeal.

AFFIRMED.

NORRIS, Circuit Judge, concurring in the judgment.

I would affirm on the ground that the initial investigatory stop amounted to a seizure, *United States v. Patino*, 649 F.2d 724, 726–27 (9th Cir. 1981), and the DEA agent did not have reasonable suspicion to make the seizure, *see Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The record supports the district court's factual finding that Belcher "reasonably believed that he ... was not free to leave." *Patino*, 649 F.2d at 726–27. The agent's only justification for making the

seizure was the presence of factors such that Belcher "fit the so-called 'drugs courier profile.'" *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980). The presence of these factors alone could not, "as a matter of law," give the agent reasonable suspicion to seize Belcher. *Id.* at 441, 100 S.Ct. at 2754.

Since I would affirm on this ground, I need not reach the question of the seizure of Belcher's shoulder bag. Nonetheless, I am troubled by the majority's attempt to reconcile the decisions in *United States v. Martell*, 654 F.2d 1356 (9th Cir. 1981), and *United States v. O'Connor*, 658 F.2d 688 (9th Cir. 1981). I cannot accept the majority's reading of *Martell*: that it involved a seizure of "unattended" suitcases. *See ante*, at 290. Nothing in Judge Curtis' opinion in *Martell* suggests that the suitcases were unattended at the moment of seizure;[1] nor did Judge Curtis offer this fact as important to his holding. Rather, Judge Curtis relied on the holding of *United States v. Van Leeuwen*, 397 U.S. 249, 253, 90 S.Ct. 1029, 1032, 25 L.Ed.2d 282 (1970) (allowing detention of packages already placed in the mail), for the broad proposition that officers can seize objects from a person's possession merely on a showing of reasonable suspicion. 654 F.2d at 1359–61. Nowhere did Judge Curtis justify the seizure on the theory that the suspects had relinquished possession of their suitcases. Such a theory would require analysis of the suspects' legitimate expectations of privacy in the luggage; yet no privacy analysis is to be found in *Martell*.[2]

1. As Judge Curtis recited the facts, the suspects left the suitcases momentarily unattended in the "security" area while they had a drink, and the agents seized the suspects as they were approaching the "boarding" area. *Martell*, 654 F.2d at 1358. Judge Curtis did not specify whether the agents seized the suitcases (1) while the suspects were having a drink outside the security area, (2) after the suspects had been detained but before the suspects had returned to their suitcases, or (3) after the suspects had returned to the security area and picked up their suitcases. In any case, the suspects had neither checked the suitcases nor otherwise relinquished possession; thus, there

was no suggestion that the suspects had lost their expectation of privacy in the suitcases.

2. I do not dispute that a warrantless search of "abandoned" property does not violate the Fourth Amendment. *See Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). But *Martell* is certainly not a case of abandoned property. A finding of abandonment requires detailed consideration of the party's intent as measured by his "words, acts, and other objective facts." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976). *Martell* contains no consideration of these factors; nor is there any suggestion that the district court had found that Martell had aban-

Judge Nelson, in dissent, took issue with the majority's analysis precisely because it created such a remarkable exception to traditional Fourth Amendment standards. *See, e.g.,* 654 F.2d at 1363 (Nelson, J., dissenting) ("such an approach is a profound departure from both Supreme Court and Ninth Circuit precedent"). For the reasons expressed in Judge Nelson's dissent, I sharply disagree with *Martell* and agree with *O'Connor* that the Fourth Amendment standard of "probable cause" governs the seizure of objects. 658 F.2d 692 n.6. But it is not for a single judge acting alone, or even for a panel of judges, to rewrite Ninth Circuit law; it is for our court acting en banc to repair the damage of *Martell* and resolve the conflict between that decision and *O'Connor.*

doned his suitcase within the meaning of *Abel* and *Jackson.* I thus fail to see the basis for the majority's suggestion that *Martel* was a case of abandoned property.