STATE of Minnesota, Respondent,

v.

Jerome A. JANKOWSKI, a.k.a. J.
Reynolds, Appellant (48465),

Randon Louis Garcia, Appellant (48209).

Nos. 48209, 48465.

Supreme Court of Minnesota.

July 13, 1979.

Meshbesher, Singer & Spence and Ronald
I. Meshbesher, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., St. Paul,
Gary W. Flakne, County Atty., Vernon E.
Bergstrom, Chief, Asst. County Atty., Ap-
pellate Division, and David W. Larson, Asst.
County Atty., Minneapolis, for respondent.

Heard before PETERSON, SCOTT, and
KENNEDY, JJ., and considered and decid-
ed by the court en banc.

CHARLES W. KENNEDY, Justice.*

Jerome A. Jankowski and Randon Louis Garcia appeal from convictions of aggravated forgery for aiding Franklin Bower in uttering a forged cashier's check at Marquette National Bank of Minneapolis on March 3, 1977, in violation of Minn.St. 609.-625, subd. 1(1), and 609.05.

Appellants contend that their warrantless arrests were illegal because made without probable cause and because the officers did not first give notice of their office and purpose before entering appellant's motel room to make the arrests, and that the warrantless seizure of luggage and an automobile, for a later search at the police station with a warrant, was unreasonable. Garcia also contends that the evidence was insufficient to sustain his conviction. We affirm the convictions.

On March 3, 1977, Franklin Bower was arrested at the Marquette National Bank in Minneapolis while uttering a forged cashier's check purporting to be issued by Aurora State Bank, Aurora, Illinois, for $2,974.30. He had uttered a similar check at the same bank 10 or 15 minutes earlier and obtained $2,974.30.

Bower told officers he had flown to Minneapolis with J. Reynolds the previous night for an illegal lobster sales venture; that they stayed at the Guest House Motel; and that he had received two forged cashier's checks from one "Rick," whom he described, and to whom he gave the proceeds of the first check. Police learned from personnel of the Guest House Motel that J. Reynolds, of Sarasota, Florida, driving an Oldsmobile, had registered for a room for two persons, and that on March 3, some time after Bower's arrest, J. Reynolds and his companion had checked out of the Guest House Motel.

A check of the Oldsmobile's license number, given with the registration, disclosed that the automobile was owned by Budget Rent-A-Car and rented on March 3, 1977, to J. Jankowski. Bower then admitted to police that Reynolds was Jankowski, but denied that Jankowski was involved in the check-cashing scheme.

On Bower's person, officers had found a matchbook from the North Star Inn. Checking with the North Star Inn, they learned that J. Reynolds of Sarasota, Florida, with the same automobile, had registered with one Mitchell for Room 904 during the evening of March 3.

On the morning of March 4, the officers went to the North Star Inn. At a registration desk on the 7th floor they verified the registration of Reynolds and Mitchell in Room 904. They learned that the automobile rented by Jankowski was in the motel parking ramp. They asked a motel clerk to accompany them to the 9th floor to help them enter Room 904 if entry was refused.

As the officers and clerk got into the elevator at the 7th floor, two young men entered the elevator. At the 9th floor, the two men left the elevator, and the officers followed them down the hall, walking a few feet behind. At Room 904, the two men stopped and one unlocked the door. When the door was opened and the men walked in, the officers followed them through the doorway. Inside the room the officers, with guns drawn, required the two men to go against the wall. When they identified themselves as Reynolds and Mitchell they were told they were under arrest. Identification then showed that Reynolds was Jankowski and that Mitchell was Garcia.

■ 1. The warrantless arrests were justified. When the officers came to the North Star Inn they believed, based on information that Bower had given them and on corroborating facts, that they had probable cause to arrest whoever could be identified as Reynolds and Mitchell. A felony had been committed by Bower, and early in the investigation the police determined that Bower had had assistance. Bower had only $20 on his person when arrested, rather than the $2,974.30 he had obtained from the first forged check 10 or 15 minutes earlier.

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

The officers knew that when Bower was in custody, an unidentified man had telephoned a bank employee asking whether charges against Bower would be dropped if the money was returned. As the investigation continued, officers had reason to believe, from what Bower told them and from what they learned from employees of two motels and a car rental agency, that Bower had two travelling companions—J. Reynolds (Jankowski) and Ralph Mitchell (Garcia). Nothing credible in the investigation suggested that Bower's help came from anyone but his companions. Thus, it was reasonable for the officers to conclude that "Reynolds" and "Mitchell" had assisted Bower in the criminal venture. Additionally, Jankowski resembled the description Bower had given of "Rick," and Garcia resembled the description of a person whom a bank employee had observed suspiciously watching Bower's arrest in the bank lobby.

We accept the officers' assessment of probable cause because it was reasonable in the circumstances. *State v. Cox*, 294 Minn. 252, 200 N.W.2d 305 (1972); *State v. Bruno*, 293 Minn. 84, 196 N.W.2d 459 (1972). Bower had committed a felony, and the officers had reasonable cause for believing that Jankowski and Garcia were accomplices in that felony. Therefore, the officers were authorized to arrest Jankowski and Garcia without a warrant. Minn.St. 629.34.

█ 2. Appellants contend that the officers' entry was a violation of Minn.St. 629.-34, the Fourth Amendment, and Minn. Const. art. 1, § 10, because the officers, in plain clothes, did not give notice of their office and purpose until after they made the arrests within the room. Minn.St. 629.-34 provides in relevant part:

"A peace officer may, without warrant, arrest a person:

\*　　\*　　\*　　\*　　\*　　\*

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; \* \* \*

\*　　\*　　\*　　\*　　\*　　\*

"To make such arrest the officer may break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he shall be refused admittance."

The method of entry did not render the arrests illegal. The kind of entry referred to in the statute did not occur, so the statute was not violated. The door to the room was not broken open by the officers, but was opened by one of the appellants and was open when the officers entered. Since there was probable cause to arrest, neither the statute nor the constitutional provisions invoked prohibited the officers from moving swiftly to avoid a closed-door situation. See, *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *People v. Maddox*, 46 Cal.2d 301, 294 P.2d 6, cert. den. 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956).

█ 3. Without a warrant the officers seized three suitcases from the motel room where Jankowski and Garcia were arrested and took the luggage to the police station. Also without a warrant they took the automobile, rented to Jankowski, from the motel parking ramp to the station. A search warrant was then obtained, and the car and luggage were searched pursuant to the warrant. We cannot accept appellants' contention that because the automobile and luggage were seized without a warrant, the evidence found inside them must be suppressed.

There was probable cause to believe that the automobile had transported Bower, his accomplices, forged checks, and forgery equipment, and so was an instrumentality of the crime and might contain evidence of the crime. Thus, there was probable cause to search it. In those circumstances it was constitutionally permissible to take the automobile from the parking ramp to the station and search it after a warrant was obtained. *State v. Roy*, 265 N.W.2d 663 (Minn.1978); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). For the same reasons it was reasonable and constitutionally permissible to take the luggage to the station and there search it pursuant to a search warrant. See, *United*

*States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

4. From the evidence the jury could reasonably find that Garcia was guilty beyond a reasonable doubt. There was evidence that Garcia (as R. Martin), Bower (as P. Phillips), and Jankowski (as J. Reynolds) had flown from Chicago to Minneapolis on North Central Airlines flight 469 and arrived at about 12:05 a. m. on March 3, 1977. Jankowski rented an automobile at Budget Rent-A-Car; when arrested Garcia had on his person a Budget Rent-A-Car map with directions to downtown Minneapolis. At the North Star Inn on March 3 Garcia registered with Jankowski under an assumed name, Ralph Mitchell. The inference that Garcia had been with Jankowski and Bower at the Guest House Motel the previous night is reasonable. Bower's luggage was in the trunk of the rented automobile and evidently had been brought to the North Star Inn on March 3 by Jankowski and Garcia. Bower had passed a forged cashier's check for $2,974.30 but had only $20 when arrested. Garcia had approximately $1,000 and Jankowski approximately $2,000 when they were arrested. On Garcia's person when arrested was a speeding ticket for a Plymouth. In one of the suitcases seized from Room 904 of the North Star Inn was a parking ticket for the same automobile. The suitcase also contained forgery equipment—a check-writing machine, clipboard, rubber stamps, rubber pad, date stamp, knife, rubber gloves, a ruler bearing Garcia's thumbprint, and 40 of the counterfeit Aurora State Bank cashier's checks. The check-writing machine in that suitcase had a Jankowski fingerprint. The cashier's checks were intermingled—some were found in Garcia's suitcase, some in Jankowski's suitcase, and some in Jankowski's jacket.

From all of the evidence it was reasonable for the jury to conclude beyond a reasonable doubt that Bower, Jankowski, and Garcia came to Minneapolis to utter forged cashier's checks and by their combined efforts uttered the cashier's check to which the complaint referred. The evidence is inconsistent with any rational hypothesis except that of guilt. *State v. Kotka*, 277 Minn. 331, 152 N.W.2d 445 (1967).

The convictions are affirmed.

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.