UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas J. LICATA,
Defendant-Appellant.

No. 83–1204.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1984.

Decided May 21, 1985.
As Modified June 10, 1985.

Norris, Circuit Judge, dissented with opinion.

Ruth L. Cohen, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Scott Michael Carter, Las Vegas, Nev., for defendant-appellant.

Before SKOPIL and NORRIS, Circuit Judges, and STEPHENS,* District Judge.

SKOPIL, Circuit Judge:

Thomas Licata was convicted of possession of unregistered firearms in violation of 26 U.S.C. §§ 5861(d), 5845, and 5871. On appeal, he argues that the district court erred in denying his motion to suppress because (1) the package containing guns was unlawfully seized; (2) his consent to open the package was not voluntary; and (3) his post-arrest statements were not voluntary. We affirm.

## FACTS

Licata negotiated with a cooperating government witness and with a Bureau of Alcohol, Tobacco and Firearms undercover agent for the illegal sale of guns. After several transactions, Licata agreed to travel to Georgia to deliver 100 "pen" guns. Special agents surveilled Licata as he arrived at the airport. There, Licata checked a small package at the airline's ticket counter. The agents testified that the package was the size necessary to contain the 100 guns.

When Licata proceeded to board the plane for his flight, one agent went to the ticket counter and advised the airline personnel that Licata would not be allowed to take the flight. Then the agent requested that the airline hold the package. The air-line employee challenged the agent's authority to make such a demand. He then asked the agent if Licata was going to take the flight. When he was informed that Licata would not be taking the flight, he retained the package.[1] The two agents then boarded the plane, and one identified himself and asked Licata to leave the plane. Once off the plane and in the boarding area, Licata was advised of his *Miranda* rights and placed under arrest for possession of unregistered firearms.

Immediately following the arrest, Licata's ticket and baggage claim check were seized by the agents. The agents and Licata proceeded to the airline ticket counter where one agent took custody of the package.

Licata and his package were transported to a local agency office. Enroute he was again asked if he understood his legal rights and whether he would answer questions regarding the guns. Licata responded that he understood his rights and admitted that the package contained 100 guns. The lower court found that Licata consented to a search of the package and that on arrival at the local office, Licata signed a Consent to Search form and thereafter voluntarily provided the agents with a signed statement.

Licata was indicted for illegal possession of unregistered firearms. He made an unsuccessful pretrial motion to suppress the

---

* The Honorable Albert Lee Stephens, Jr., United States District Judge for the Central District of California, sitting by designation.

1. The government agent testified at trial as follows:

"Q: What did you say to that ticket agent?
A. I asked him if Mr. Licata had checked a package with him. He said that he did. I asked him to hold the package for me. At first he balked—Backing up a minute, I previously identified myself to him as a Federal officer before I asked him if Mr. Licata checked a package. He said that he did. I asked him to hold it for me. He balked, thought he didn't have the authority to based on my identification. Then he asked me if Mr. Licata was going to take the flight. I said that he was not. He said he would hold the package for me.

Q: Well, the fact is that he told you 'I don't think that's enough authority,' your identification? Is that what he said to you?
A: Specifically, I couldn't say, but words to that effect, that he didn't believe that just my identification was sufficient enough to hold the package for me.
Q: Isn't it also true that you told him, 'Well, Mr. Licata is not taking the flight.' Didn't you say that to the ticket agent?
A: He asked me if he was going to take the flight, and I said, 'No, he is not.'
Q: And, when you said that he said okay and went back and secured the box?
A: When he said he would secure the box, I left. I don't know what he did.
Q: But he did tell you he was going to hold the box for you, didn't he?
A: That's correct."

(TR pp. 208–209.)

statements made at the time of his arrest and to suppress the 100 guns found in the package. At the conclusion of the government's case, Licata again unsuccessfully moved for suppression of the evidence.

## DISCUSSION

### 1. Seizure of the Package.

■ We do not doubt that a seizure occurred. *See United States v. Jacobsen*, —— U.S. ——, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (seizure occurs when there is interference with an individual's possessory interests); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983) ("no doubt" that agents seized luggage when they stated that they were taking it to a federal judge to secure a warrant); *United States v. Ogden*, 485 F.2d 536, 540 (9th Cir.1973) (holding checked baggage pending a warrant amounts to a seizure). As a general rule, seizure of property is "per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause...." *Place*, 103 S.Ct. at 2641. While there exist exceptions to this warrant requirement,[2] the Supreme Court has emphasized that these exceptions are "few," "specifically established," and "well-delineated." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

The government seeks to base the warrantless seizure upon the agents' reasonable and articulable suspicion that the package contained contraband and that detention was proper to allow further investigation. The district court ruled on that basis, finding that officers "may seize a container which they have reasonable cause to believe contains contraband, and they may hold it in their possession until such time as they can ... obtain a search warrant."

■ We agree that law enforcement authorities may make a warrantless seizure if they have probable cause to believe that a container holds contraband and the exigencies of the circumstances demand the seizure. *See Arkansas v. Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). Further, warrantless seizures of personal luggage from the custody of the owner can be made on less than probable cause for the purpose of a limited investigation. *Place*, 103 S.Ct. at 2644; *United States v. Beale*, 736 F.2d 1289, 1291–92 (9th Cir.1984) (*en banc*).

■ We conclude that the seizure here went beyond a temporary, investigative seizure. The agents did not seize Licata's package for purposes of an investigation. Their purpose was to hold the package until they obtained either Licata's consent to open it or a search warrant. Nor was the detention temporary. While the time period from seizure to consent was brief, the officers never intended to return the package to Licata. Under these circumstances, the seizure here cannot be justified under *Place* which allows temporary detentions of property for investigative purposes.

That is not to say, however, that the seizure cannot otherwise be constitutionally justified. *Sanders* at least implies that police may seize and detain property that

---

**2.** One such exception is a search or seizure incident to arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The government here has abandoned its attempt to justify the seizure of the package as incident to arrest probably because the seizure was not contemporaneous with the arrest and was remote in distance from the arrest. See *United States v. Johnson*, 722 F.2d 525, 527 (9th Cir.1983) (valid search incident to arrest must be limited to areas within the immediate control of the person arrested).

Arresting officers are not permitted to lead the accused from place to place and use that presence in each location to justify a search or seizure. *United States v. Whitten*, 706 F.2d 1000, 1016 (9th Cir.1983) (*quoting United States v. Mason*, 523 F.2d 1122, 1126 (D.C.Cir.1975)); *United States v. Rothman*, 492 F.2d 1260, 1266 (9th Cir.1973). Nor can police circumvent the fourth amendment's warrant requirement by bringing luggage to the accused. *E.g., United States v. Wright*, 577 F.2d 378, 381 (6th Cir.1978).

they have probable cause to believe contains contraband for the purpose of securing a warrant to search. Although the initial seizure of property there was unchallenged, the Court expressly noted that the police acted not only "properly" but "commendably" in seizing a suitcase that they believed contained drugs. *Sanders*, 442 U.S. at 761, 99 S.Ct. at 2591. The Court reasoned that the police instead of immediately opening the suitcase, should have taken it, along with the accused, to the police station and there obtained a warrant for the search. 442 U.S. at 766, 99 S.Ct. at 2594. *See also United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977) (after initial seizure and detention of footlocker, the validity of which was not contested, it was unreasonable to search without a warrant).

Several courts have upheld the right of the police to seize personal property pending the application for a search warrant.[3] Our examination of these cases convinces us that no new exception to the fourth amendment was intended. None of these cases expressly eliminates the necessity for probable cause or exigent circumstances. Indeed, when either is missing, we have found a constitutional violation in the warrantless seizure of property. *E.g., United States v. Belcher*, 685 F.2d 289, 290–91 (9th Cir.1982) (seizure of shoulder bag impermissible for lack of probable cause); *United States v. Allen*, 644 F.2d 749, 750–51 (9th Cir.1980) (warrantless seizure of briefcase unjustified for lack of probable cause);

*Corngold v. United States*, 367 F.2d 1, 3 (9th Cir.1966) (*en banc*) (warrantless seizure and search of luggage not justified in the absence of exigent circumstances); *see also United States v. Martin*, 562 F.2d 673, 677–78 (D.C.Cir.1977) (no exigent circumstances to justify warrantless seizure and search of luggage at bus station).

■ We are not unmindful of the argument that different interests may be implicated by a seizure than by a search. *See Jacobsen*, 104 S.Ct. at 1660–61. The fourth amendment provides protection to the owner of every container that conceals its contents from plain view. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (*citing Robbins v. California*, 453 U.S. 420, 427, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981)). But, "it has been settled that an officer's authority to possess a package is distinct from his authority to examine its contents." *Walter v. United States*, 447 U.S. 649, 654, 100 S.Ct. 2395, 2400, 65 L.Ed.2d 410 (1980). A seizure of a closed container affects only the owner's possessory interests and not the privacy interests vested in the contents. *Chadwick*, 433 U.S. at 13–14, n. 8, 97 S.Ct. at 2484–2485, n. 8. The difference between possessory and privacy interests may, in part, justify the warrantless seizures of property for the time necessary to secure a warrant in situations such as *Sanders* and *Chadwick* where a warrantless search was held impermissible.[4]

---

**3.** *E.g., United States v. Corbitt*, 675 F.2d 626, 629 (4th Cir.1982); *United States v. Viegas*, 639 F.2d 42, 45 (1st Cir.1981); *United States v. Klein*, 626 F.2d 22 (7th Cir.1980); *United States v. Palazzo*, 488 F.2d 942 (5th Cir.1974); *United States v. Lonabaugh*, 494 F.2d 1257 (5th Cir.1973); *United States v. Garay*, 477 F.2d 1306 (5th Cir.1973); *Parish v. Peyton*, 408 F.2d 60 (4th Cir.1969); *United States v. Painter*, 480 F.Supp. 282 (W.D. Mo.1979). *Accord State v. Moore*, 29 Wash.App. 354, 628 P.2d 522 (1981); *People v. Plantefaber*, 410 Mich. 594, 302 N.W.2d 557 (1981); *State v. Jankowski*, 281 N.W.2d 717 (Minn.1979); and *State v. Kaiser*, 91 N.M. 611, 577 P.2d 1257 (1978).

**4.** In *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), the Court upheld the seizure of a mailed package that was

detained for 29 hours on the basis of less than probable cause. The Court reasoned that the main fourth amendment interest in a mailed package attaches to the privacy of its contents and not to the speed of its delivery. *Id.* at 253, 90 S.Ct. at 1032. Thus, no fourth amendment interest was violated by holding the package for a day rather than forwarding it. *Id.; see also United States v. Hillison*, 733 F.2d 692, 696 (9th Cir.1984) (segregation and detention of mailed package did not violate fourth amendment). Similarly, in *Place*, the Court reasoned that seizures of property may be less intrusive than seizures of the person. *Place*, 103 S.Ct. at 2643–44. The intrusion on possessory interests by the seizure of property relinquished to the control of a third party may be minimal. When the intrusion is small, *Place* teaches that fourth amendment interests must yield to "strong

The differing interests between searches and seizures were more fully explored in the Court's recent decision in *Segura v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). There the Chief Justice, with Justice O'Connor joining, concluded that since seizure affects only possessory interests and not privacy interests, the heightened protection accorded privacy interests "is simply not implicated where a seizure is ... at issue." *Segura*, 104 S.Ct. at 3389. The Chief Justice reasoned that these different interests allow the seizure of property if supported by probable cause even in the absence of exigent circumstances. *Id.* at 3388–89.

■ We hesitate to apply that distinction to this case. Admittedly, Licata's possessory interests were not strong. He had checked the package with the airline. The seizure of the package had no deleterious effects on Licata's travel plans since Licata had been arrested. Assuming that the agents had probable cause to believe that the package contained contraband, the rationale in *Segura* might arguably support the warrantless seizure. But the Chief Justice's analysis in *Segura* received the support of only one other Justice. Three others joined Justice Stevens' strong dissent and the remaining three elected not to join the Chief Justice's seizure analysis. Additionally, the elimination of the exigent circumstances requirement even for minimally intrusive seizures appears contrary to several past decisions. For example, in *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971), the Court was faced with the warrantless seizure of an automobile. In declaring the seizure in violation of the Constitution, the Court applied the "familiar principle" that "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Coolidge*, 403 U.S. at 468, 91 S.Ct. at 2039. The fact that the item seized was contraband made no difference as to the legality of the seizure. "[E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not ... make a warrantless seizure." *Id.*; *see also Warden v. Hayden*, 387 U.S. 294, 300–01, 87 S.Ct. 1642, 1646–47, 18 L.Ed.2d 782 (1967) (eliminating for fourth amendment analysis any differences between the seizure of evidential items and contraband). Moreover, our prior decisions support the requirement of exigent circumstances. *See, e.g., United States v. O'Connor*, 658 F.2d 688, 692, n. 6 (9th Cir.1981) (probable cause alone cannot justify a warrantless seizure in the absence of exigent circumstances); *United States v. Gonzalez-Rodriguez*, 513 F.2d 928, 930 (9th Cir. 1975) (no amount of probable cause can justify a warrantless seizure absent exigent circumstances). Accordingly, prevailing fourth amendment law requires a finding of both probable cause and exigent circumstances to support the warrantless seizure in this case.

A. Probable Cause

■ There is no real dispute that the agents had probable cause to believe that the package contained contraband. "[P]robable cause is a flexible, common sense standard." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). It requires only that facts be available to the officers which would "warrant a man of reasonable caution," *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), to believe that certain items may be contraband or evidence of a crime. *Brown*, 460 U.S. at 742, 103 S.Ct. at 1542. "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Id.* (*quoting Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)).

The agents had negotiated with Licata for the sale and delivery of the pen guns. They knew of his plan to personally deliver

---

countervailing governmental interests." *Id.* At least one circuit has held that a seizure of luggage that has no deleterious effects on the air traveler "is simply not a fourth amendment issue." *United States v. Puglisi*, 723 F.2d 779, 787 (11th Cir.1984).

the guns. The container was the size necessary to contain the pen guns. The agents' observations of the package coupled with their prior knowledge of Licata's plan to personally deliver the contraband is sufficient to supply the requisite probable cause.[5]

### B. Exigent Circumstances

■■■■ The exigent circumstances requirement gives us greater concern. The government bears a heavy burden of demonstrating that exceptional circumstances justified departure from the warrant requirement. *United States v. Spetz*, 721 F.2d 1457, 1465–66 (9th Cir.1983). The burden cannot be satisfied by speculation about what may or might have happened. *United States v. Hoffman*, 607 F.2d 280, 284 (9th Cir.1979). There must exist "specific and articulable facts which, taken together with rational inferences ...," support the warrantless intrusion. *United States v. Dugger*, 603 F.2d 97, 99 (9th Cir.1979) (*quoting Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion. *People of Territory of Guam v. Borja*, 732 F.2d 733, 736 (9th Cir.1984).

■■■■ The district court made no findings and reached no conclusions on whether exigent circumstances existed.[6] The issue raises mixed questions of law and fact subject to *de novo* review. *United States v.*

*Maybusher*, 735 F.2d 366, 371 n. 1 (9th Cir.1984); *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.1984) (*en banc*). While we have no legal conclusions to review, the factual record is sufficient to enable us to apply settled principles of fourth amendment law to determine the propriety of the seizure of the package. *See United States v. Calandrella*, 605 F.2d 236, 247 n. 4 (6th Cir.1979) (reviewing suppression grounds not raised below because the issue presented on appeal was of "constitution dimension" and the factual record was adequate for review).

■■■■ Ordinarily, in the airport setting, exigent circumstances are apparent. A delay in seizure may mean loss or possible destruction of the contraband by the owner. Exigent circumstances exist because a reasonable person believes that prompt action is necessary to prevent the destruction of relevant evidence or prevent other consequences that may improperly frustrate legitimate law enforcement efforts. *McConney*, 728 F.2d at 1199.

■■■■ The agents faced the possibility that contraband not within their control would be lost or destroyed if they had not instructed the airline to hold the package. *See United States v. De La Fuente*, 548 F.2d 528, 539 n. 13 (5th Cir.1977) (apprehension of suitcase being lost in transit proved well founded when airline did indeed misroute it). The agent's action was arguably a "seizure" of the package that was necessary to terminate such exigencies. *Cf., Corngold*, 367 F.2d at 3 (packages checked

5. Contrary to Licata's assertions, the agents did not have sufficient information to have obtained a search warrant in advance. Prior to observing Licata and the package, the agents were not aware of how Licata would package or ship the guns.

An application for an advance search warrant would not have been able to state with sufficient particularity the item or package to be seized. *See, e.g., United States v. Gomez-Soto*, 723 F.2d 649, 653–54 (9th Cir.1984).

6. The district court primarily addressed whether Licata's consent to search the package was freely given. Additionally, the court briefly declared that the seizure of the package occurred after Licata's arrest. The latter declaration was

in apparent response to the charge that the seizure could not be justified as incident to arrest. The district court did not mention the obvious and usual considerations such as probable cause, reasonable suspicion or exigent circumstances that one might expect with this type of case. Nevertheless, we believe that these considerations are now properly before us on appeal. The constitutionality of the seizure of the package was clearly placed in issue during the proceedings before the magistrate. The defendant again raised the issue in his objections to the magistrate's conclusions. Furthermore, we requested and received supplemental briefing from the parties on the issue of the existence of exigent circumstances.

to airline were in no danger of being removed).

Even assuming that the seizure did not take place until the agents took physical control of the package, we would still find the requisite exigent circumstances. The record shows that the agents knew of previous conversations with Licata to the effect that he had a friend in Eastern Air Lines Freight, and that he, Licata, could ship anything Air Freight under another name. As Licata and the agents commenced walking through the airport to the ticket counter to retrieve the package, Licata told the agents that he had friends that were employed at the airport by the airline holding his package. The remark was intended as a justification for Licata's request to cover his handcuffs while being escorted through the airport. It also confirmed what the agents had learned earlier.

The future of the package, if left unclaimed by the agents or Licata, would have been uncertain. It might have been sent on to its destination where there was no one present to claim it, or where it would have been possible for someone to have picked it up. Common sense would indicate that, since Licata had been arrested and would not be taking the flight, the package should accompany him. The access that Licata's friends had to the package and what they knew of its contents were unknown and troublesome factors. Based upon the record, it would not have been unreasonable for the government agents to have been concerned that Licata's friends might obtain the package. The agents presented the claim check to the airline employee and the package was surrendered to them. The usual risk of loss of contraband left unsecured and the overall circumstances in this case constitute exigent circumstances sufficient to justify the warrantless intrusion on Licata's possessory interest in the package. Of course, for the reasons discussed in *Chadwick* and *Sanders*, the agents could not have constitutionally searched the package without either consent or a warrant.

## 2. Voluntariness of Consent to Search and Statements.

Whether consent to search was voluntarily made is a question of fact reviewed under the "clearly erroneous" standard. *United States v. Caicedo-Guarnizo*, 723 F.2d 1420, 1423 (9th Cir.1984). The voluntariness of statements made to the agents is also reviewed under the clearly erroneous standard. *E.g., United States v. Dufur*, 648 F.2d 512, 513–14 (9th Cir.1980), *cert. denied*, 450 U.S. 925, 101 S.Ct. 1378, 67 L.Ed.2d 355 (1981); *United States v. Parker*, 549 F.2d 1217, 1220–21 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

Licata argues that his consent to search the package and his waiver of the right to remain silent were coerced and were made neither knowingly nor intelligently. He asserts that the "totality of circumstances" show that (1) he had never been arrested before; (2) he was not told whether he was arrested for possession of the guns in the package or for his prior possession of the guns mailed to the witness; and (3) he was not apprised of his right to telephone counsel. The district court rejected these arguments.

The government bears the burden of proving that the consent to search was obtained and that it was freely and voluntarily given. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir.1984). Whether consent to search was indeed voluntary or was the product of duress or coercion is to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Similarly, the voluntariness of post-arrest statements must be assessed by a review of the totality of the circumstances. *Dufur*, 648 F.2d at 513–14. To be voluntary, a confession must be "the product of a rational intellect and a free will." *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir.1981) (*quoting Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960)).

The magistrate found that Licata acknowledged at the hearing that he consented to the search and that he clearly understood his rights. Licata did not suffer from a lack of education or intelligence that would vitiate his consent and render his statements involuntary. Finally, the agents did nothing that could be deemed impermissibly coercive so as to render Licata's consent to search or consent to answer questions involuntary.

The magistrate apparently believed the testimony of the agents that Licata never asked to call his attorney or sought to stop the questioning. On cross-examination Licata acknowledged that he understood the *Miranda* warnings, that his consent to search the box was voluntary, and that the agents were courteous to him throughout the questioning. Based on this, the magistrate determined that "[d]efendant's consent to search and statements provided following advice of his *Miranda* rights were freely and voluntarily given." These findings, which depend on the district court's assessment of the credibility of the witnesses, are supported by the record and are not clearly erroneous. *See Caicedo-Guarnizo*, 723 F.2d at 1424 (upholding district court's credibility determinations on voluntariness of consent to search) and *Dufur*, 648 F.2d at 514 (upholding credibility determinations resolving conflicting evidence to found a voluntary confession).

### CONCLUSION

The warrantless seizure of the package was not improper. Licata's post-arrest consent to search and statements were voluntarily made.

AFFIRMED.

NORRIS, Circuit Judge, dissenting:

I dissent from the court's holding that exigent circumstances justified the warrantless seizure because I believe this case is controlled by *Corngold v. United States*, 367 F.2d 1 (9th Cir.1966) (en banc). In *Corngold*, customs agents opened a package that the appellant had left at a Trans World Airlines' cargo loading platform at Los Angeles International Airport. The agents believed the package contained smuggled watches. They opened one of the packages, found that it contained a large quantity of watches, and resealed the package. The packages were then flown to New York, where customs agents maintained constant surveillance until they were claimed three weeks later.

Our court, sitting en banc, held that the warrantless airport search was not justified even if the customs agents had probable cause to believe the packages contained contraband. 367 F.2d at 3. The court based its holding on the fact that the government made no showing that the packages might have been removed before a warrant could be obtained, that neither appellant nor the airline was threatening to remove them, and that from the time appellant left the packages with the carrier in Los Angeles they were subject to the effective control of the customs agent. Thus, the teaching of *Corngold* is that exigency does not justify a warrantless search of packages when the owner has temporarily surrendered custody of them to a carrier and the packages are destined for another city. A warrant could have been obtained to seize the packages upon their arrival at their destination.

The only conceivable distinction between the facts of *Corngold* and those here is that the agents knew that Licata had a friend who worked at Eastern Air Lines Freight. *Supra* at 544. The record, however, yields no evidence on the issue whether the officers were in fact concerned that the package might be taken by Licata's friend. This is not surprising given that the issue of exigent circumstances was not litigated below. Indeed, it was argued for the first time in supplemental briefs requested by this panel. As a result, there is no evidence on the issue whether the agents were concerned that Licata's friend might remove the package.

Although the government conceivably could have made a showing of exigent circumstances had it raised the issue below, I would find, based on the record before us,

that there is no meaningful way to distinguish this case from *Corngold*. There was ample time to seek a warrant authorizing seizure of the package upon its arrival in Georgia.