**UNITED STATES of America, Plaintiff,**

v.

**Donnie D. CAMPBELL, Defendant.**

**No. A85–15 Cr.**

United States District Court,
D. Alaska.

Dec. 24, 1985.

Decision Amended Jan. 24, 1986.

Michael Spaan, U.S. Atty., James Swartz, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff.

Richard B. Collins, Anchorage, Alaska, for defendant.

## AMENDED OPINION [1]

FITZGERALD, Chief Judge.

Defendant Donnie D. Campbell was arrested on January 22, 1985 and charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982). Campbell moves to suppress about a pound of cocaine that was found in a search of his luggage, conducted pursuant to a search warrant at the Anchorage airport. He contends that his fourth amendment rights were violated by his initial questioning and detention, as well as by the detention of his luggage for purposes of a dog-sniff, that his fifth amendment rights were violated by the failure to give him *Miranda* warnings, and that the detention of him and his luggage by Alaska state officers violated Alaska law. I deny Campbell's motion to suppress.[2]

---

1. A memorandum and order on Campbell's motion to suppress was filed on September 24, 1985. The government moved for reconsideration of that decision on October 23, 1985. The September 24, 1985 order is hereby withdrawn, and replaced with this amended decision.

2. Campbell's motion to suppress was referred to the Magistrate for recommendation, and he recommended that it be denied. Campbell has filed objections to that recommendation with this court.

## ANALYSIS

Campbell contends that the government's motion to reconsider my original decision on his motion was untimely, and challenges the legality of his initial questioning and detention, the detention of his luggage, the failure to give him *Miranda* warnings, and the conduct of the Alaska state law enforcement officers who detained him and his luggage.

### A. The Government's Motion to Reconsider

■ It is undisputed that the government filed its motion to reconsider my September 24, 1985 decision on October 23, 1985—twenty-nine days afterward. Campbell contends, as a threshold matter, that the motion to reconsider is untimely under this district's local rules, which require that such motions be filed within ten days of the court's original order. *See* District of Alaska Gen.Rule 5(J)(1).

However, the Ninth Circuit and the Supreme Court have indicated that motions for reconsideration brought by the government in criminal cases, concerning matters on which the government could appeal under 18 U.S.C. § 3731 (1982), are timely if filed within thirty days. *See In re Grand Jury Subpoenas (Kiefaber)*, 774 F.2d 969, 973-74 (9th Cir.1985); *see also United States v. Dieter*, 429 U.S. 6, 7-9, 97 S.Ct. 18, 19-20, 50 L.Ed.2d 8 (1976); *United States v. Healy*, 376 U.S. 75, 78, 84 S.Ct. 553, 555, 11 L.Ed.2d 527 (1964). Since this thirty-day time limitation is based upon the Ninth Circuit's and Supreme Court's interpretations of section 3731, which is a federal statute, it must control in spite of this district's local rule. *See In re Grand Jury*, 774 F.2d at 974. The government's motion to reconsider is therefore timely.

### B. Initial Questioning of Campbell

■ Campbell contends that his initial questioning by Alaska State Trooper Canter violated his fourth amendment rights. I disagree. The fourth amendment does not prohibit a law enforcement officer from approaching an individual in a public place and asking the individual if he or she is willing to answer some questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall*, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 1876-77, 64 L.Ed.2d 497 (1980); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The person approached need not answer any questions and remains free to walk away. *Royer*, 460 U.S. at 497-98, 103 S.Ct. at 1324; *Mendenhall*, 446 U.S. at 559, 100 S.Ct. at 1879. As long as a reasonable person would believe that he or she is free to leave, there is no intrusion upon any constitutionally-protected interest. *Mendenhall*, 446 U.S. at 554-55, 100 S.Ct. at 1877; *United States v. Patino*, 649 F.2d 724, 726-27 (9th Cir.1981).

Thus, Canter did not require any predicate when she initially approached Campbell and asked if he would speak with her. Campbell responded that he would and voluntarily moved a few feet out of the traffic area. Within a few minutes, Canter ascertained Campbell's name from his Oklahoma driver's license and learned that he had just arrived on a plane travelling through Seattle. She asked to see his plane ticket and Campbell voluntarily produced it. Canter noticed that it was a one-way ticket from Houston, Texas to Anchorage, that it was in the name of Larry Thomas, and that it had been purchased for cash. When she asked Campbell about the discrepancy in names, he responded that he had bought the ticket from a man in Houston.

■ Asking for Campbell's driver's license and plane ticket and examining them when he voluntarily complied did not violate Campbell's fourth amendment rights. *See Royer*, 460 U.S. at 501, 103 S.Ct. at 1326. The fact that Campbell was not told that he could refuse to stop and answer questions does not change this. *See Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1877. I find that under these circumstances, a reasonable person would have believed that he was free to end the conversation and walk away. There was no fourth amendment violation at this stage.

**324**

### C. *Terry-Type Detention of Campbell*

Campbell contends that at a certain point, Canter's initial questioning of him ripened into a *Terry* -type detention, and that the detention violated his fourth amendment rights. Although I agree that by the time it was concluded, the questioning of Campbell had become a *Terry* -type detention, I do not agree that this detention violated the fourth amendment.

■ It is clear that "reasonable suspicion of criminal activity" warrants a temporary *Terry* -type detention for questioning. *Royer*, 460 U.S. at 498–99, 103 S.Ct. at 1324; *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). The scope of the intrusion permitted will vary from case to case, but it must last no longer than is necessary to effectuate the purpose of the stop. *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325.

■ Canter's initial observations of Campbell and Campbell's responses to her first few questions revealed that: (1) Campbell had travelled to Anchorage from Houston, Texas, which is considered by drug enforcement authorities as a "drug-source" city; (2) he deplaned early; (3) he was travelling alone; (4) upon entering the airport he scanned the crowd in a furtive manner; (5) he carried a carry-on bag over his shoulder; (6) he left the gate area quickly; (7) he appeared nervous while waiting at the baggage claim area and while answering questions; (8) his plane ticket was in a name different from that on his driver's license; and (9) his plane ticket had been purchased with cash. From her training at a seminar sponsored by the Drug Enforcement Administration (DEA) at Chicago's O'Hare Airport, Canter concluded that these characteristics satisfied the drug-courier profile. I conclude that these factors, in combination, supplied Canter and Sergeant Grimes with "reasonable suspicion" that Campbell was carrying concealed drugs, and therefore justified a temporary detention under *Terry*. *See id.* at 502, 103 S.Ct. at 1326. The troopers were justified in detaining Campbell and his luggage temporarily while they attempted to verify or dispel their suspicion. *See id.*

■ In an effort to confirm or dispel their suspicion, Canter asked Campbell whether he was carrying any drugs. Campbell said he was not. Canter indicated that the troopers were conducting a drug investigation at the airport and were looking to intercept a large quantity of narcotics, but were not concerned with a small amount of drugs. Campbell then produced a small bag of loose marijuana from one pocket and a bag containing two partially used marijuana cigarettes from another pocket. Canter asked Campbell what was in his luggage. Campbell responded that he did not know, and said it might be paraphernalia for his uncle's head shop. I find that Canter's additional questions were within the scope of a *Terry* -type detention.

By the end of their conversation with Campbell, therefore, the troopers had added two more observations to the nine enumerated previously: (1) Campbell was carrying a small quantity of marijuana, and (2) he claimed that his luggage contained paraphernalia for his uncle's head shop. The presence of these factors strengthened the troopers' reasonable suspicion that Campbell was carrying concealed drugs.

■ The entire conversation between the troopers and Campbell lasted about ten minutes, from 3:45 p.m. to 3:55 p.m. I find that this brief detention of Campbell for questioning did not exceed the permissible scope of a *Terry* -type seizure based on reasonable suspicion.

### D. *Detention of Campbell's Luggage For a Dog-Sniff*

Campbell contends that the troopers' detention of his luggage in order to subject it to a dog-sniff constituted an unreasonable seizure under the fourth amendment. I disagree. The Supreme Court has held that for an investigative detention of an individual's luggage to pass muster under the fourth amendment, it must meet the same standards as a *Terry* -type investiga-

tive stop. *See United States v. Place*, 462 U.S. 696, 708–09, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983); *see also United States v. Sharpe*, —— U.S. ——, 105 S.Ct. 1568, 1574–75, 84 L.Ed.2d 605 (1985). I conclude that the troopers' investigative detention of Campbell's luggage fully satisfied these *Terry* standards.[3]

Near the close of their conversation, Canter asked Campbell if he had any objection to having the troopers search his luggage. Campbell responded that he did. Canter then told Campbell that the troopers would detain his luggage for a dog-sniff: she indicated that the dog-sniff would occur that day, but did not provide a specific time-frame. She informed Campbell that the dog-sniff would take place in the troopers' office at the airport, and that his luggage would be stored in the evidence locker at that office whenever it was not in the troopers' actual custody.

Campbell was informed that he could remain with his luggage or that he could leave and the troopers would contact him later. Campbell chose to leave. Grimes and Campbell exchanged phone numbers and other information. Campbell was told that he would be contacted about the result of the dog-sniff. If the dog did not alert, the troopers would contact Campbell to return his luggage to him. If there were a positive alert, the troopers would continue to detain the luggage and apply for a search warrant.

After Campbell left the airport at 3:55 p.m., the troopers returned to their office at the airport, and telephoned Sergeant Bowman at home at 4:12 p.m. Bowman arrived with the narcotics-detection dog at 4:28 p.m. and prepared the dog for duty. The dog alerted to the presence of drugs in Campbell's luggage at 4:52 p.m. About one hour elapsed between the time the troopers seized Campbell's luggage and the time the dog alerted.

Campbell claims that the investigative detention of his luggage violated the fourth amendment because of the length of time that elapsed before the dog-sniff was conducted and because Canter gave Campbell no clear indication of when the dog-sniff would occur. To determine whether the investigative detention of Campbell's luggage satisfied the requirements of *Terry*, I must examine

> whether the [detention] was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

*Sharpe*, 105 S.Ct. at 1573 (quoting *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879).

 I conclude that the troopers' detention of Campbell's luggage was "justified at its inception," based on Canter's observations of and discussions with Campbell, including Campbell's suspicious-sounding response about the contents of his luggage. To determine whether the detention was also "reasonable" in its scope, I must consider its duration, the law enforcement purposes it served, and the time reasonably needed to effectuate those purposes. *Id.; United States v. Hensley*, —— U.S. ——, 105 S.Ct. 675, 683–84, 83 L.Ed.2d 604 (1985); *Place*, 462 U.S. at 703–04, 103 S.Ct. at 2642–43; *Michigan v. Summers*, 452 U.S. 692, 700 & n. 12, 101 S.Ct. 2587, 2593 & n. 12, 69 L.Ed.2d 340 (1981). In light of these considerations, I conclude that the detention was reasonable in its scope.

 The Supreme Court has recently indicated that "[i]n assessing whether a detention is too long in duration to be justified as an investigative stop, [courts must determine] whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant [or his property]." *Sharpe*, 105 S.Ct. at 1575. The Su-

---

**3.** The government originally conceded that the troopers did not have *probable cause* to seize Campbell's luggage prior to subjecting it to a dog-sniff, *see* Government's Response to Defendant's Memorandum In Support of Motion to Suppress, p. 15, but now argues in its motion for reconsideration that its seizure of the luggage was justified based upon probable cause. Because of my ruling on Campbell's motion to suppress, I need not reach this issue.

preme Court has cautioned that courts performing this analysis "should not indulge in unrealistic second-guessing" of the police:

A creative judge engaged in *post hoc* evaluation can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, in itself, render the [police conduct] unreasonable."

*Id.* at 1576 (citations omitted). As the Court explained, "*[t]he question [in such cases] is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.*" *Id.* (emphasis added).

Campbell contends that the one-hour detention of his luggage at the airport prior to subjecting it to a dog-sniff was unreasonably long. He relies upon the Supreme Court's decision in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), which held that a ninety-minute investigative detention of a defendant's luggage for purposes of a dog-sniff was unreasonable. *See id.* at 709–10, 103 S.Ct. at 2645–46. Campbell recognizes that at the time of his stop and detention, the troopers had only one narcotics-detention dog available to them, and that when he arrived at the airport, the dog and its handler, Sergeant Bowman, were not on duty. Nevertheless, he contends that the delay in administering the dog-sniff was unreasonable. Campbell notes that when the troopers stopped him, they had been waiting specifically for a narcotics shipment about which they had been informed. He argues that in light of their purpose for being at the airport and the likelihood that a dog-sniff might be required, it was unreasonable for them not to bring their detection dog with them in order to minimize any possible intrusion to individuals they would

stop. *See Sharpe*, 105 S.Ct. at 1575; *Place*, 462 U.S. at 709, 103 S.Ct. at 2645. He also maintains that even if the troopers' own dog was not available to be at the airport with them, they should have borrowed a narcotics-detection dog from the Municipality of Anchorage or some other agency, or should have acquired a second dog of their own.[4]

I cannot accept Campbell's contentions. The Supreme Court has explicitly rejected the notion that a "rigid time limitation" can be imposed in determining the reasonableness of *Terry* detentions. *See Sharpe*, 105 S.Ct. at 1575; *Place*, 462 U.S. at 709 & n. 10, 103 S.Ct. at 2646 & n. 10. Moreover, in assessing the reasonableness of the detention of Campbell's luggage, I cannot conclude, based on the record in this case, that the troopers "were dilatory in their investigation," or that there was "any delay unnecessary to the legitimate investigation of the law enforcement officers." *Sharpe*, 105 S.Ct. at 1576. After their discussion with Campbell, Carter and Grimes promptly returned to their office at the airport and called Bowman, who immediately came to the airport with the narcotics-detection dog. Bowman arrived within about thirty minutes of Campbell's departure. Once Bowman arrived, approximately another twenty minutes was required to prepare the detection dog to perform the dog-sniff. The record indicates that this preparation period is not unusual when the dog has not previously been on duty, and was not attributable to any dilatoriness on the part of the troopers.

As to Campbell's claim that the troopers should either have brought their detection dog to the airport earlier that day, borrowed another detection dog, or maintained more than one detection dog of their own, the Supreme Court has expressly cautioned courts against indulging in such second-guessing of police conduct. *See id.* Although adopting any of these options would clearly "have minimized the intru-

---

**4.** The record indicates that the troopers added a second narcotics-detection dog to their kennel

in April, 1985.

sion on [Campbell's] Fourth Amendment interests," *Place*, 462 U.S. at 709, 103 S.Ct. at 2645–46, I cannot agree with Campbell, based on the present record, that it was "unreasonable" for the troopers not to pursue any of them. *See Sharpe*, 105 S.Ct. at 1576; *see also U.S. v. West*, 731 F.2d 90, 92–94 (1st Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985).

■ Campbell also contends that the detention of his luggage was unreasonable because when the troopers initially detained the luggage, they failed to give him a precise time when the dog-sniff would occur. Canter indicated only that the dog-sniff would occur that same day. Although the Supreme Court has suggested that law enforcement officers should be as precise as possible in informing individuals about the timing and procedures that will be followed when their luggage is detained for a dog-sniff, *see Sharpe*, 105 S.Ct. at 1576; *Place* 462 U.S. at 710, 103 S.Ct. at 2646, I conclude that the troopers' failure to provide a precise time-frame in Campbell's case was not unreasonable under the fourth amendment. The troopers were extremely explicit in describing to Campbell the procedures they intended to follow, and they provided him with a telephone number where he could contact them. I cannot conclude that their failure to provide a precise time for the dog-sniff, in the absence of any question or request by Campbell, constituted a fourth amendment violation.

For all these reasons, I conclude that the troopers' investigatory detention of Campbell's luggage was not "unreasonable" under fourth amendment standards. *See United States v. Borys*, 37 Crim.L.Rep. (BNA) 2331–32 (7th Cir. June 27, 1985) (holding that 75-minute detention of suspected drug courier's luggage in airport pending arrival of narcotics-detection dog was not unreasonable under fourth amendment), *cert. denied*, —— U.S. ——, 106 S.Ct. 852, 88 L.Ed.2d 893 (1986).

### E. Seizure of Campbell's Luggage Pending Search-Warrant Application

■ Although Campbell has not directly challenged the troopers' retention of his luggage between the completion of the dog-sniff on Saturday, January 19, 1985, and their formal application to the federal magistrate for a search warrant on Monday, January 21, 1985, I conclude that this also did not violate the fourth amendment. Once the dog-sniff of Campbell's luggage was completed, the troopers were no longer holding the luggage merely "for purposes of an investigation"; their retention of the luggage pending application for a search warrant constituted a full-scale seizure. *See United States v. Licata*, 761 F.2d 537, 540–41 (9th Cir.1985). Therefore, to satisfy fourth amendment standards, the retention of the luggage must have been supported by both probable cause and exigent circumstances. *See id.* at 541–44.

I find that both these requirements were satisfied following the completion of the dog-sniff. The detection dog's alert, combined with Campbell's suspicious responses to questions concerning the contents of his luggage, was sufficient to provide the troopers with probable cause to search the luggage. *See id.* at 542; *see also United States v. Spetz*, 721 F.2d 1457, 1464 (9th Cir.1983). Moreover, Campbell's nervous demeanor and evasive answers were sufficient to lead the troopers to believe that exigent circumstances existed, and that retention of Campbell's luggage was "necessary to prevent the destruction of relevant evidence or prevent other consequences that [might] improperly frustrate legitimate law enforcement efforts." *Licata*, 761 F.2d at 543. Following the dog-sniff, the troopers' only alternatives were to retain the luggage themselves or to return it to Campbell pending their application for a search warrant. Based on the record, I conclude that it was necessary for them to retain the luggage in order to prevent "loss or possible destruction of ... contraband by the owner." *Id.* Therefore, the troopers' retention of Campbell's luggage was supported by both probable cause and exigent circumstances.

■ I also note in passing that the two-day duration of the troopers' retention of

Campbell's luggage pending their application for a federal search warrant was not unreasonable under the fourth amendment. *See Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 3390 & n. 8, 82 L.Ed.2d 599 (1984) (dictum). The record indicates that the troopers attempted to contact the federal magistrate early on the evening of Saturday, January 19, only a few hours after the dog-sniff had been completed, but learned then that the magistrate was unavailable. They appeared before the magistrate to apply for a search warrant on the next business day: Monday, January 21. Under the circumstances, I cannot conclude that their conduct was unreasonable under fourth amendment standards. *See id.*

*F. Failure To Give Campbell A Miranda Warning*

■■■ Campbell contends that his fifth amendment rights were violated because the troopers failed to give him a *Miranda* warning when questioning him at the airport. *Miranda* requires that when an individual is subjected to custodial interrogation, he must be warned that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be appointed if he cannot afford one. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966). Given my explicit finding that the troopers' questioning of Campbell did not constitute a custodial interrogation, *Miranda* does not apply to his case. Therefore, I reject Campbell's fifth amendment challenge.

*G. Alaska Law Violations By State Troopers*

■■■ Finally, Campbell contends that the cocaine seized from his luggage must be suppressed because the troopers, as state officers, violated Alaska law in stopping him at the airport and detaining his luggage for a dog-sniff. Campbell maintains that the troopers' actions violated the Alaska-law principles enunciated in *Coleman v. State,* 553 P.2d 40, 43 (Alaska 1976), and *Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978).[5]

I do not agree. The Ninth Circuit has recently held that "[e]vidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law.*" *United States v. Little,* 753 F.2d 1420, 1434 (9th Cir.1984) (citations omitted and emphasis original). Moreover, two recent Alaska cases clearly indicate that the troopers' actions in stopping and detaining Campbell and in detaining his luggage for a dog-sniff did not violate the principles of *Coleman* or *Ebona* or violate Alaska law in general. *See Pooley v. State,* 705 P.2d 1293, 1305–11 (Alaska Ct.App.1985); *see also Givson v. State,* 708 P.2d 708, 710–11 (Alaska Ct.App. 1985).

Therefore, I reject Campbell's challenge based on Alaska law.

## CONCLUSION

· Based on this analysis, I reject Campbell's contentions that the troopers violated his rights under the fourth and fifth amendments and Alaska law. I hereby deny Campbell's motion to suppress the cocaine seized from his luggage.

5. Campbell notes that a state magistrate denied an application by the troopers for a warrant to search Campbell's luggage on January 19, 1985. He claims that this denial indicates that the troopers violated Alaska law in stopping and detaining Campbell and in detaining his luggage for a dog-sniff. I do not agree.

The transcript of the hearing on the search warrant application suggests that the state magistrate found that there was no probable cause to search Campbell's luggage. The denial was not based on a finding that the troopers had violated Alaska law by detaining Campbell and his luggage. The transcript also suggests that the state magistrate may have misapplied Alaska and federal law principles in denying the application for a search warrant.